[Civ. No. 53208. Second Dist., Div. One. Dec. 29, 1978.]

D. A. LIPSCOMB et al., Plaintiffs and Appellants, v.
ROBERT E. KRAUSE, Defendant and Respondent.

COUNSEL

Joseph B. Merryman III for Plaintiffs and Appellants.

Jones & Wilson and Sherwin V. Wittman II for Defendant and Respondent.

OPINION

HANSON, J.—D. A. and Mozel Sue Lipscomb, husband and wife (hereinafter referred to collectively as Lipscomb or plaintiffs), appeal the dismissal of their action for attorney malpractice entered pursuant to the granting of a nonsuit to defendant Robert Krause.

### FACTS

At trial it was established that the acts of defendant which the Lipscombs alleged to constitute malpractice occurred during the conduct of two lawsuits which related to a single parcel of real property owned by plaintiffs and which were being prosecuted simultaneously. One was an action filed by plaintiffs in which they sought damages from the City of Barstow for pollution of the water on their property (case No. 132969). The other was an action subsequently filed against plaintiffs by the City of Barstow in which it sought to acquire the parcel by condemnation (case No. 35498). Defendant Krause was on July 13, 1968, retained to represent plaintiffs in both actions.

These cases were scheduled to be tried in sequence, commencing on January 5, 1970, with the condemnation action first and the damage action immediately thereafter. On the first day of trial of the condemnation action and prior to presentation of any evidence, the parties entered a stipulation that there would be no mention of the pollution of the water in the condemnation proceeding and that the condemnation award would reflect the value of the property with pure water in return for which the damage action would be dismissed. That stipulation was reflected in the official reporter's transcript and was duly noted in the minutes of the court. When judgment was rendered in the condemnation action awarding plaintiffs the amount determined to be the current value of the property with pure water, the damage action was dismissed pursuant to that stipulation.

Subsequently plaintiffs on September 27, 1972, filed a complaint charging defendant Krause with malpractice in his handling of that litigation. The principal focus of their charge is the allegation that: "[T]he defendant negligently performed his duties as attorney for Plaintiffs in that he dismissed such [the water pollution] case with prejudice without plaintiffs' consent or knowledge . . . ."

The only expert testimony presented at the attorney malpractice trial was that which related to the degree, source and duration of the pollution of water on the parcel of real property subjected to condemnation. At the close of plaintiffs' evidence, defendant Krause moved for nonsuit on the basis that there had been no evidence presented to establish either the standards of care reasonably owed by an attorney to his client under the circumstances, or that the actions of the defendant constituted a breach thereof. The trial court reviewed the narrow issue presented by the pleadings and concluded, in view of the applicable law, that the issue of whether malpractice had occurred was one of fact which was not within the common knowledge of laymen. Plaintiffs offered to obtain expert testimony but were held to be bound by their pretrial stipulation in which they identified the water pollution experts they intended to call and agreed that no other expert witnesses would be called to testify. Since there was no substantial evidence on which to base an instruction to the jury on the malpractice issue, the trial court granted the motion for nonsuit.

ISSUE

Plaintiffs Lipscomb contend on appeal that since the duty of care on which their action is based is set forth by statute (Code Civ. Proc., § 283) no expert testimony was required as to the duty owed by their attorney or whether his conduct constituted a breach thereof.

DISCUSSION

It is clear that the theory of plaintiffs-appellants as set forth in their complaint and reflected in both their pretrial preparation and their trial presentation was that defendant Krause's negligent failure to inform Mr. Lipscomb prior to entering the stipulation to dismiss in the condemnation action constituted malpractice. ■ They contend that an attorney has no authority to compromise a client's claim without the client's knowl-

edge, relying on Code of Civil Procedure section 283.[1] Section 283 is customarily referred to when the question arises whether an attorney has followed the procedure necessary to bind his client and to render a stipulation enforceable. The effect of the section in those situations is to establish not the authority of the attorney or its limitations, but the manner in which it may properly be exercised. (See, e.g., *Fowlkes* v. *Ingraham* (1947) 81 Cal.App.2d 745, 747 [185 P.2d 379].)

" ' "The evident object of this section [sec. 283, Code Civ. Proc.] is that whenever the attorney shall enter into an agreement for the purpose of binding his client, there shall be *such a record thereof as will preclude any question concerning its character or effect, and that the extent of the agreement may be ascertained by the record,* if oral, that it shall be entered in the minutes, and if written, that it shall be filed with the clerk. 'It is not intended to enlarge or abridge the authority of the attorney, but only to prescribe the manner of its exercise.' [Citation.] . . ." ' " (*Cathcart* v. *Gregory* (1941) 45 Cal.App.2d 179, 187 [113 P.2d 894], quoting *Smith* v. *Whittier* (1892) 95 Cal. 279, 287-288 [30 P. 529].)

The question in the present case is not whether the stipulation entered into previously with respect to dismissal of the water pollution damages action was valid. Plaintiff Lipscomb does not herein question the binding effect of the stipulation which resulted in the dismissal of that action. It is apparent that the requirements of section 283 were fulfilled by defendant Krause with respect to that stipulation.

■ The question raised by this appeal is whether defendant Krause's stipulation to dismiss the water pollution damages case in consideration for a condemnation award based on the value of the property with pure water, if proven to have been without his client's consent, constitutes malpractice per se. Expert testimony tended to establish that the water on the parcel of real property owned by Lipscomb had been contaminated by the City of Barstow and was unpotable for some years prior to the condemnation proceedings suggesting that there was a good cause of action for damages. However, the evidence in the present case was in

[1]Code of Civil Procedure section 283 provides:

"An attorney and counselor shall have authority:

"1. To bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise;

"2. To receive money claimed by his client in an action or proceeding during the pendency thereof, or after judgment, unless a revocation of his authority is filed, and upon the payment thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment."

conflict as to whether Mr. Lipscomb knew about and consented expressly or impliedly to the stipulation to dismiss. He testified he had left the courtroom but the court's minutes reflected his presence at the time the stipulation was read.

No evidence of any kind was presented to establish whether the stipulation, at the time it was entered, was legally advantageous or disadvantageous to Lipscomb, or what the legal consequences of it were.

The trial court concluded, on consideration of defendant Krause's motion for nonsuit for lack of expert testimony on the malpractice issue, that giving the plaintiffs the benefit of every doubt, the evidence was insufficient to present to the jury. The existence of malpractice is generally a question of fact to be determined by the jury. (*Ishmael* v. *Millington* (1966) 241 Cal.App.2d 520 [50 Cal.Rptr. 592]; *Starr* v. *Mooslin* (1971) 14 Cal.App.3d 988 [92 Cal.Rptr. 583].)

It is the current view in California that the legal malpractice suit is but one variety of negligence action and is governed by the general doctrines of pleading and proof prevailing in negligence actions. (See, e.g., *id.,* at p. 999.) These questions of fact in a case such as the one at bench require expert evidence. The issue of whether and when expert evidence is required in a legal malpractice action appears to have been resolved in the affirmative by *Wright* v. *Williams* (1975) 47 Cal.App.3d 802 [121 Cal.Rptr. 194].

"After a shaky start, the California law has evolved the proposition that the issue of attorney malpractice is in essence a question of fact similar to that involved in other professional negligence." (*Id.,* at p. 807.)

"*Smith* v. *Lewis* [(1975) 13 Cal.3d 349 (118 Cal.Rptr. 621, 530 P.2d 589)] teaches that attorney malpractice is to be determined by the rules that apply to professional negligence generally, subject to the necessary qualification that the court must determine legal questions which underlies [*sic*] the ultimate decision. There are cases involving the question of attorney malpractice where reasonable minds cannot differ on the ultimate result that the conduct does or does not satisfy the duty of care. In those, the question is treated as one of law and not of fact, as it is in any negligence action. [Citations.] There are cases where regardless of the attorney's negligence his advice or action was correct because of a governing legal principle so that the negligence does not proximately

cause harm. [Citations.] Except in those situations, the issue is one of fact. . . ." (*Wright* v. *Williams, supra,* 47 Cal.App.3d 802, 808-809, fn. omitted.)

"Generally, the creation of the attorney-client relationship imposes upon the lawyer the obligation to represent his client with ' "such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." ' (*Ishmael* v. *Millington,* 241 Cal.App.2d 520, 523 [50 Cal.Rptr. 592]; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421].) The standard is that of members of the profession 'in the same or a similar locality under similar circumstances' [citation]. . . ." (47 Cal.App.3d at p. 809.)

Plaintiffs' proof relative to these issues generally requires the testimony of experts as to the standards of care and consequences of breach. "Expert evidence in a malpractice suit is conclusive as to the proof of the prevailing standard of skill and learning in the locality and of the propriety of particular conduct by the practitioner in particular instances because such standard and skill is not a matter of general knowledge and can only be supplied by expert testimony. [Citations.] . . ." (*Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 156 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].)

We conclude that the trial court did not err in granting the motion for nonsuit based on its conclusion that legal consequences of the facts by which Lipscomb sought to establish malpractice were not within the common knowledge of laymen and required expert testimony.

## DISPOSITION

The judgment is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.