JOANNE SHANLEY *et al.*, Plaintiffs-Appellants, v. HARVEY BARNETT *et al.*, Defendants-Appellees.

First District (4th Division)   No. 87—0775

Opinion filed March 31, 1988.

William J. Sneckenberg & Associates, Ltd., of Chicago (William J. Sneckenberg and Robert J. Spinazzola, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (George W. Spellmire and Joshua G. Vincent, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Joanne Shanley and Joanne Shanley and Associates, Ltd. (Shanley), brought a legal malpractice action in the circuit court of Cook County against defendants, Harvey Barnett and Barnett and Biegel, Ltd. (Barnett). Shanley sought damages arising from the alleged negligence of Barnett in negotiating, drafting, and advising her on a contract between her and a client. The trial court granted Barnett's motion for summary judgment. Shanley now appeals, contending that the trial court erred in granting summary judgment for Barnett.

We affirm.

BACKGROUND

The record shows that Shanley is a licensed real estate sales agent and broker. In 1979, she founded her own real estate company, Condominium Concepts, Ltd. In 1981, Shanley retained Barnett as the company's attorney.

In January 1982, Shanley met with Jack Wogan, a Chicago real estate developer. Wogan had converted a building on Canal Street into a mixed-use commercial and residential project known as Fulton House. Shanley solicited Wogan for the business of marketing and selling the residential condominium units in Fulton House.

In March 1982, Shanley reached a verbal agreement with Wogan. Shanley directed Barnett to negotiate and draft a written contract memorializing the verbal agreement. She instructed Barnett to include in the contract the proper legal protections in her favor. Barnett prepared a four-page contract that Shanley and Wogan signed on March 5, 1982. The contract provided in pertinent part:

"1. Appointment as Broker: Fulton does hereby retain and appoint Broker as its exclusive residential agent and does hereby grant broker an exclusive listing for a period of one year to sell the units ***. This exclusive listing shall terminate on March 8, 1983 provided, however, that either party may cancel this Agreement upon sixty days prior written notice.
* * *

3. Commissions: Fulton shall pay Broker a commission of five percent of the gross sales price for each unit *for which broker procures a purchaser*; said sum to be payable at closing of said sale. In the event another Broker cooperates *** in the

sale of the Unit, Fulton agrees to pay a commission of six percent of the gross sales price due and payable at closing, said commission to be split equally between Broker and Cooperating Broker.

\* \* \*

5. Commission Surviving Sales Contract: In the event Fulton terminates this Agreement \*\*\*, or in the event the same is not renewed after the expiration thereof, for a period of six months after the termination of this Agreement, Broker shall be entitled to a commission on the foregoing basis on sales of any Units to purchasers who were shown Units during the period of time *that Broker acted as the Broker for the Units or who were procured by Broker* during the period of time that this Agreement was in effect. Broker agrees to register all such potential purchasers with Fulton at the time of expiration or termination of this contract." (Emphasis added.)

Condominium Concepts, Ltd., went out of business in July 1982. Shanley informed Wogan by letter of the company's demise. The letter further stated that she was willing to continue doing business with Fulton House under the same terms as contained in the contract with Condominium Concepts. Pursuant to Shanley's request, Barnett reviewed and approved the letter.

On July 10, 1982, Shanley met with Wogan to discuss the terms of her proposal. Wogan then informed Shanley by letter that Fulton House was willing to hire her as the broker for its residential units on substantially the same terms as in the former contract. They met again on July 23, 1982, to negotiate a contract, which Barnett drafted and which they executed that day. This new contract was nearly identical to their earlier agreement; however, the new contract allowed either party to cancel the agreement on 30 days' written notice instead of the 60 days' notice of the prior contract.

On December 15, 1982, Wogan informed Shanley that Fulton House, through its own efforts, had found a group of investors who would buy all of the available residential units. Fulton House, therefore, cancelled its agreement with Shanley. Fulton House, however, was interested in negotiating with Shanley the amount of the commission owed to her under the contract. Shanley claimed that she was entitled to $280,000 in commissions under the contract. Several months of negotiations between Barnett and Fulton House resulted in a settlement offer of $22,500.

Barnett informed Shanley that Fulton House owed her nothing under the contract. The third paragraph of the contract provides for

commissions only "for each unit for which broker procures a purchaser." Since Shanley did not procure the buyers for Fulton House, she was not entitled to any commission. Barnett advised her to accept the settlement. Shanley accepted the settlement and signed a termination agreement.

Shanley filed her amended complaint on September 18, 1985. In her complaint and subsequent affidavit, she charged Barnett with negligence in negotiating, drafting, and advising her on both Fulton House contracts. She alleged that the contracts failed to provide her with a commission if Fulton House procured a buyer for the remaining unsold units. She further alleged that Barnett failed to advise her of the absence of this provision, that he led her to believe that the contracts provided for that contingency, and that she would not have signed the contracts had she known about this absence. She sought $250,000 in damages, plus attorney fees and prejudgment interest.

Barnett subsequently moved for summary judgment, which the trial court granted on February 3, 1987. At an earlier hearing on the motion, the trial court based its ruling on two findings. The court first found that Shanley failed to allege that Fulton House would have agreed to a contract provision allowing her a commission even if she did not procure the buyer. Secondly, the trial court found that Shanley was an experienced and learned real estate broker and also that the contract itself was brief, simple and direct. The court held, therefore, that Shanley should be bound by what she read and signed. Shanley appeals.

OPINION

■ When a plaintiff appeals from a trial court's order of summary judgment for a defendant, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) If the record shows that there is a genuine issue as to any material fact, summary judgment should not be granted. In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions, and affidavits in the light most favorable to the nonmoving party. If fair-minded persons could draw different conclusions from the evidence, the issues should be submitted to a jury to determine what conclusion seems most reasonable. Conversely, when the evidence shows that no genuine issues of material fact have been raised, the moving party is entitled to judgment as a matter of law. (*Artis v. Fi-*

*bre Metal Products* (1983), 115 Ill. App. 3d 228, 231-32, 450 N.E.2d 756, 758.) Further, negligence cases involving the question of the reasonableness of an individual's conduct are within the scope of summary judgment, as is any other case. *Mitchell v. Ralston* (1971), 130 Ill. App. 2d 759, 762, 266 N.E.2d 424, 426.

▆ Shanley assigns error to the trial court's findings upon which it based its entry of summary judgment for Barnett. We choose, however, to follow a different path. It is the judgment that is on appeal to a reviewing court and not what the trial court may have said. The reviewing court need not accept the reasons that the trial court gave for the judgment. Further, a reviewing court may affirm a judgment upon any ground warranted, regardless of whether the trial court relied upon it and regardless of whether the reason that the trial court gave was correct. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.) These principles apply equally to summary judgments. *Mount Prospect State Bank v. Marine Midland Bank* (1983), 121 Ill. App. 3d 295, 298-99, 459 N.E.2d 979, 982.

▆▆ The record in the instant case reveals that Shanley did not include in her pleadings an affidavit by an expert establishing the standard of care and Barnett's breach of that standard. Shanley claims, however, that Barnett "offered no expert testimony to establish that [Barnett's] performance of service represented a reasonable degree of care and skill. As movants, Defendants [Barnett] had the burden to come forward with such proof."

An attorney is liable to his client for damages only when he or she fails to exercise a reasonable degree of care and skill, and the law distinguishes between negligence and mere errors of judgment. Further, the question of whether an attorney has exercised a reasonable degree of care and skill is one of fact, and the standard of care against which the attorney's conduct will be measured must generally be established through expert testimony. (*Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 522, 394 N.E.2d 559, 563; *Brown v. Gitlin* (1974), 19 Ill. App. 3d 1018, 1020, 313 N.E.2d 180, 182.) Additionally, the plaintiff carries the burden of proving that defendant breached his duty to the plaintiff. *Priest v. Dodsworth*, 235 Ill. at 617, 85 N.E. at 942; *Brown v. Gitlin*, 19 Ill. App. 3d at 1020, 313 N.E.2d at 182.

In the instant case, Shanley claimed that Barnett was negligent in negotiating, drafting, and advising her on the contracts with Fulton House. She alleged in her affidavit that she instructed Barnett to prepare the first contract between Condominium Concepts, Ltd., and

Fulton House "with the proper legal protections in favor of Condominium Concepts." Shanley further alleged that she understood these "legal protections" to include a provision that her company would receive its full commission even if Fulton House procured on its own a buyer for the units during the term of the contract. Consequently, Shanley believed that this "legal protection" was continued in the second contract with Fulton House.

These allegations of negligence are not obvious and apparent. Expert testimony would be unnecessary in such a case to define further that which is already abundantly clear. (*House v. Maddox* (1977), 46 Ill. App. 3d 68, 73, 360 N.E.2d 580, 584.) Rather, this record "shows the need for expert testimony in determining whether or not defendant in the case at bar had exercised a reasonable degree of care and skill with due regard to the distinction between errors of negligence and of mistaken legal judgment." *Brainerd v. Kates* (1979), 68 Ill. App. 3d 781, 786, 386 N.E.2d 586, 590.

This cause is here on Shanley's amended complaint. She filed her original complaint on December 10, 1984. As we earlier noted, she filed her amended complaint on September 18, 1985. Barnett moved for summary judgment on June 6, 1986, which the trial court granted on February 3, 1987. Shanley has had ample time to obtain the necessary expert testimony to establish Barnett's negligence. When a plaintiff cannot obtain expert testimony to establish negligence, summary judgment is appropriate. *Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 523, 394 N.E.2d 559, 564-65; *Brainerd v. Kates* (1979), 68 Ill. App. 3d 781, 787, 386 N.E.2d 586, 590.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.