Ronald GOODER, individually, Brent Gooder, individually, and Instacare Center of Jackson, Inc., a Wyoming corporation, Petitioners,

v.

Arlene ROTH, individually and Arlene Roth as next friend of Mark Roth and Lori Roth, Respondents.

No. 89–124.

Supreme Court of Wyoming.

March 12, 1990.

John I. Henley (argued), and Richard Kraemer of Vlastos, Brooks & Henley, P.C., Casper, for petitioners.

Robert W. Horn, P.C., Jackson, for respondents.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and HARTMAN, District Judge.

HARTMAN, District Judge.

This cause is before the court upon a writ of certiorari. Petitioners, the defendants in a medical malpractice action, challenge an order of the district court granting respondents a partial judgment in that suit on the issue of liability. They contend that the district court's issuance of that order, as a sanction for petitioners' alleged failure to answer an interrogatory, constituted an abuse of discretion. Inasmuch as we agree with that contention, it is unnecessary to consider, at this time, any of the additional issues raised by petitioners.

We reverse.

This case commenced on October 27, 1988, when respondents filed their complaint and served petitioners with a number of interrogatories. Among those interrogatories was the following:

> INTERROGATORY NO. 18. Identify all expert witnesses you intend to call at trial of [sic] consult with prior to trial.

Petitioners' response, mailed December 21, 1988, included this answer to Interrogatory No. 18:

> *ANSWER:* A decision of which experts to be called at trial has not been made, but will be provided as mandated by the Wyoming Rules of Civil Procedure and applicable Court Orders. The question is objected to as being vague and perhaps seeking information not discoverable.

On March 10, 1989, respondents filed a motion to compel, again requesting that petitioners name any experts to be called at trial. Although a request for hearing was filed with that motion, the record is devoid of any evidence that such a hearing was held. The next document in the record is the district court's order of March 28, 1989, requiring that petitioners answer Interrogatory No. 18 within 15 days. On April 10, 1989, in compliance with that order, petitioners' supplemental response named two individual petitioners as potential expert witnesses and, in addition, stated:

These defendants anticipate that a settlement conference will shortly be conducted, and in the event the settlement conference is not successful, they may list additional expert witnesses to testify on their behalf.

Respondents then filed a second motion to compel, accompanied by a request for hearing, on May 16, 1989. Despite the record's silence, once again, as to any hearing being held, the district court, on May 22, 1989, entered judgment against petitioners on the issue of liability for their failure to answer Interrogatory No. 18.

Discovery plays a pivotal role in civil litigation. It affords the parties the means to determine the strengths and weaknesses of each other's case. Thus, it enables counsel to adequately prepare for trial and, just as significantly, it aids in settlement of cases. As all counsel and courts are aware, however, the discovery process also provides opportunities for abusive and oppressive litigation tactics. Interrogatories present a particularly fertile field for such abuses, by both the proponent and the party to whom they are directed.

On the one hand, even with the limitations placed on them by the Wyoming Rules of Civil Procedure and our Uniform Rules for the District Courts, interrogatories may be designed in part, through their sheer number and complexity, or through the broad scope of information sought, to overburden the answering party and divert him from more productive endeavors. Similarly, proponents often seek to place additional pressures on defendants by submitting interrogatories shortly after filing a complaint. In such cases, relief from abusive and burdensome discovery techniques may be had by way of the trial court's power to rule on objections to improper discovery requests and its power to grant extensions of time and fashion protective orders.

On the other hand, parties receiving interrogatories have also been known to abuse the discovery process through a variety of stalling tactics. Ranking among the most common of these are such measures as the entry of frivolous objections or unwarranted requests for protective orders, the submission of incomplete or evasive answers, and even wholesale refusals to comply with discovery requests. Where a proponent of interrogatories, such as respondents in the present case, suspects the other party of such dilatory tactics, W.R.C.P. 37 permits relief in the form of a motion to compel compliance with the discovery request. If, as was alleged of petitioners in the present case, a party disobeys an order granting such a motion and compelling compliance, Rule 37 also empowers the district court to impose a variety of sanctions for that disobedience. The most severe of these sanctions, of course, is a default judgment against the offending party.

With respect to the availability of this sanction we have observed:

> Rule 37(d), W.R.C.P., is explicit in permitting the entry of default judgment against one who fails to file answers to interrogatories or to excuse such failure.

*Zweifel v. State ex rel. Brimmer*, 517 P.2d 493, 498–99 (Wyo.1974). Although we have, thus, recognized the propriety of default judgments in proper cases, they are not favored; we prefer that cases be tried on their merits. *Spitzer v. Spitzer*, 777 P.2d 587, 591 (Wyo.1989); *Estate of Mora*, 611 P.2d 842, 849 (Wyo.1980). However, we also recognize that the district court must generally be afforded broad discretion, both in the mechanisms adopted to control discovery and in its selection of appropriate sanctions for violations of its discovery orders. Such discretion extends to the use of default judgments. *Spitzer*, 777 P.2d at 591; *Farrell v. Hursh Agency, Inc.*, 713 P.2d 1174, 1180 (Wyo.1986). Accordingly, we will not require the district court to resort to lesser sanctions, except where a default judgment would be an abuse of discretion. *Id.* Consistent with our view that the primary consideration in investigating an alleged abuse of discretion is whether the court could have reasonably concluded as it did, *Inskeep v. Inskeep*, 752 P.2d 434, 436 (Wyo.1988), we have observed that Rule 37 sanctions cannot be imposed for failing to produce something a

party does not have and which is unavailable to him. *Farrell*, 713 P.2d at 1180.

In *Spitzer*, a divorce case, the wife sought the production of certain documents material to the nature and worth of the parties' marital property—initially by a request for production, and again in conjunction with a notice of deposition served on her husband. Her spouse neither responded to those requests nor appeared for deposition. The district court, therefore, ordered him to produce the documents and warned that his failure to do so would result in a default judgment in his wife's favor. Although we held that the court could make no property division without affording the parties an opportunity for a hearing, we otherwise upheld the court's decision to sanction, through default judgment, the husband's subsequent failure to produce the documents. We similarly upheld resort to that sanction in *Farrell*. In that case, the district court had ordered a party to produce a number of his past income tax returns. During the ten months following that order, the party produced only a portion of those returns despite two subsequent motions to compel and two motions seeking sanctions for his recalcitrance. The district court then issued its second order compelling production of the requested returns, warning of its intent to enter a default judgment as a sanction for noncompliance.

*Spitzer* and *Farrell* presented us with litigants who did not deny the existence of, or their access to, the requested information. Yet, they repeatedly refused to cooperate and were purposefully dilatory. Such elements are absent from the present case. Petitioners here initially answered Interrogatory No. 18 by informing respondents that, while they had not as yet made a decision with respect to which experts they would call at trial, they recognized their duty under the Wyoming Rules of Civil Procedure to inform respondents of that decision, once made. That answer, submitted a scant six weeks after the filing of respondents' complaint, does not suggest any evasiveness or stalling by petitioners. This is not to say that, when a supplementation of that response was not forthcoming some three months later, respondents were unjustified in filing their motion to compel. However, petitioners complied with the district court's subsequent discovery order. They preliminarily designated two experts to be called at trial, informed the court of their expectation of a settlement conference, and indicated that, should settlement efforts fail, they would have to reevaluate their needs for additional experts. Once again, they expressed their willingness to keep respondents informed of such decisions. Hardly six weeks later, following a second motion to compel, the district court granted respondents a default judgment on the issue of liability due to petitioners' asserted failure to answer the interrogatory.

There is simply no reasonable ground in the record for such a conclusion. Petitioners' answer may not have been what opposing counsel was seeking—that is, some medical expert who could testify as to reasonable standards of care. However, an answer was submitted, and it was sufficient to apprise counsel of petitioners' most recent decision as to who would testify. Respondents were not deprived of the opportunity to depose those witnesses in advance of trial and, thereby, prepare to meet their testimony. One might speculate that petitioners were dishonest in their response; that they, in fact, intended to employ additional experts but chose to withhold their names solely to disadvantage respondents. However, such speculation finds no support in the record. Accordingly, it cannot reasonably serve as a ground for the district court's decision. Absent evidence of such unfair tactics at the time of respondents' motion to compel, proof of petitioners' deception must await either trial or some eleventh hour attempt by petitioners to introduce additional experts. Should it then appear the identity of a proffered expert was not disclosed in sufficient time for opposing counsel to meet his testimony, adequate remedies exist under W.R.C.P. 37 to keep that witness from testifying. *See Carter v. Moog Automotive, Inc.*, 126 F.R.D. 557 (E.D.Mo.1989).

We recognize that, if litigation is to proceed to resolution in a fair and orderly fashion, trial courts must be able to control the discovery process. To that end, W.R. C.P. 37 has made a wide range of sanctions available to the courts and has granted the courts considerable discretion to mete out those sanctions to parties who would impede that process. However, a trial court cannot be permitted to exercise its options in an arbitrary or unreasonable manner. While we are generally hesitant to interfere with a trial court's choice of a particular sanction, we cannot uphold the use of such a harsh remedy as a default judgment where, as in the present case, it appears that no sanction can be reasonably justified. The record shows that, following each discovery request or order compelling discovery, petitioners updated their answer to Interrogatory No. 18. They cannot be sanctioned for complying with discovery.

Had the court, in this case, set a deadline for the selection of expert witnesses, the result may have been different. Such could have been accomplished through a scheduling conference, preliminarily setting a trial date and cut-off dates for various phases of discovery. Through such means, the parties would be afforded some input regarding the time needed to work on discovery, and the court would be provided with a valuable tool for controlling discovery. Had the court required the parties to select their experts by a given date, it could reasonably expect them to name those experts within that deadline. Without such limitations, however, petitioners could only be expected to name the experts they had chosen at the time of the order. Although the court could not properly sanction petitioners for failing to provide information they did not have, it would be justified in enforcing its scheduling order by limiting petitioners' use of expert witnesses to those named by the cut-off date. Moreover, if petitioners' defense required expert testimony and they, nevertheless, failed to designate any expert witnesses by that deadline, the court would unquestionably be justified in entering a default judgment against them. Such a scheduling order is not present in this case, however, and we

decline to read the trial court's order compelling petitioners to answer Interrogatory No. 18 as setting a deadline for the selection of expert witnesses.

Because the record in this case offers no support for the district court's conclusion that petitioners disobeyed its discovery orders, it was unreasonable and an abuse of the court's discretion to sanction such alleged disobedience by way of a default judgment. We reverse and remand.