**Susan Marie MOORE, Appellant
(Plaintiff),**

v.

**Thomas E. LUBNAU, II, Appellee
(Defendant).**

**No. 92–151.**

Supreme Court of Wyoming.

July 15, 1993.

James P. Castberg, Sheridan, for appellant.

Patrick J. Murphy and Richard L. Williams of Williams, Porter, Day & Neville, P.C., Casper, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

MACY, Chief Justice.

The trial court entered a summary judgment in favor of Appellee Thomas E. Lubnau II after Appellant Susan Marie Moore failed to submit opposing expert testimony in support of her legal malpractice claim. Ms. Moore appeals from the district court's order denying her motion for a rehearing of the motion for summary judgment.

We affirm.

Ms. Moore presents the following issues for our review:

The trial court erred in granting the appellee's motion for summary judgment

Based upon the pleadings and the discovery, this case is not one that can be determined by summary judgment

Appellant's failure to timely designate her expert witness was not sufficient grounds for granting appellee's motion for summary judgment

Appellant's failure to ultimately designate an expert witness until after summary judgment had been entered against her constituted excusable neglect

Appellee's delay in timely completing his deposition constitutes such excusable neglect as to afford appellant relief

Counsel for appellee's conflict of interest does not constitute sufficient grounds to grant summary judgment

The district court erred in granting summary judgment because of appellant's failure to have a designated expert witness

Has the specter of Jetty Lee Harvey unduly influenced the judiciary so that appellant is unable to obtain a fair trial?

Ms. Moore and her husband were granted a divorce on October 12, 1989. *Moore v. Moore,* 809 P.2d 255, 256 (Wyo.1991). On February 21, 1991, Ms. Moore initiated a legal malpractice action, claiming that Mr. Lubnau negligently represented her in the divorce proceeding. She brought the malpractice claim after she failed to obtain primary custody of her daughter and allegedly failed to receive an equitable distribution of the marital property. In her complaint, Ms. Moore claimed that Mr. Lubnau departed from acceptable professional standards because he failed to call lay and expert witnesses whose testimony would have been relevant to the custody of her daughter, failed to introduce evidence of the husband's sexual practices which were relevant to the daughter's custody, failed to impeach or rebut testimony of the husband and his witnesses, failed to present evidence which would have resulted in her receiving a greater share of the marital property, and failed to conform the divorce decree to the transcript of the court's ruling from the bench. Mr. Lubnau denied all the allegations of negligence.

As the litigation progressed, the trial court entered a scheduling order requiring Ms. Moore, among other things, to designate her expert witnesses by October 15, 1991. The court subsequently amended its order to grant a new deadline of November 1st. On November 4th, Ms. Moore filed a motion requesting the court to allow her until November 15th to designate her expert witnesses. No hearing was held concerning this motion, and the trial court never entered an order extending the November 1st deadline. Ms. Moore finally designated two expert witnesses on December 13th.

On December 20, 1991, Mr. Lubnau filed a motion for summary judgment together with supporting affidavits, depositions, and various other documents. Included in the supporting materials was the expert testimony of Mr. Lubnau and the judge who had tried the case (he subsequently entered into private practice). Ms. Moore filed a traverse to the motion for summary judgment supported by her own affidavit as well as by affidavits from other lay witnesses. She did not submit an affidavit from either of the experts whom she designated on December 13th. One expert apparently withdrew because he had a conflict of interest with Mr. Lubnau's attorney. Ms. Moore's second expert was originally designated to discuss Mr. Lubnau's "failure ... to raise an objection to certain matters which arose" in the underlying divorce action. It is not clear why she did not submit an affidavit from this expert. Rather than submitting her own opposing expert testimony, Ms. Moore merely claimed that the testimony of Mr. Lubnau's experts contained factual inconsistencies.

The testimony of Mr. Lubnau's experts demonstrated that Mr. Lubnau's conduct met the requisite standard of care for legal practice. Consequently, in order to create a genuine issue of material fact, Ms. Moore had to submit expert testimony demonstrating that Mr. Lubnau's representation fell below that standard of care. The court concluded that Ms. Moore's lack of countervailing expert testimony indicated that no genuine issue of material fact existed and that summary judgment was appropriate. Significantly, the court also found that Ms. Moore did not move for additional time under either W.R.C.P. 56(f) or W.R.C.P. 6(b) in which to procure her own expert testimony.

On April 6, 1992, Ms. Moore moved for a rehearing pursuant to W.R.C.P. 59 on the summary judgment motion. She based her motion on the fact that she had found an expert witness who would testify in support of her legal malpractice claim. Ms. Moore alleged that this witness could not have been discovered with reasonable diligence prior to the summary judgment hearing. Her motion was supported by the affidavits of her attorney and the newly

discovered expert. The court denied her motion because the expert's affidavit did not constitute newly discovered evidence and because allowing the expert's affidavit would have effectively nullified the original scheduling order. The court also found that Ms. Moore did not make a sufficient showing of her efforts to find an expert prior to the hearing and that W.R.C.P. 59 did not provide an appropriate method for seeking additional time in which to procure witnesses.

Ms. Moore raises a long list of issues in her appeal from the trial court's decision. These issues can essentially be reduced to (1) whether a genuine issue of material fact existed to preclude the trial court's entry of a summary judgment and (2) whether the court erred in denying Ms. Moore's motion to rehear the motion for summary judgment.

Our standard of review in cases where summary judgment has been granted is:

"We review a summary judgment in the same light as the district court, using the same materials and following the same standards. Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. (citations omitted.)" *Zmijewski v. Wright,* 809 P.2d 280, 282 (Wyo.1991) (citations omitted)....

" 'A motion for summary judgment places an initial burden on the movant to make a prima facie showing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. Rule 56(c), Wyoming Rules of Civil Procedure. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. We analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the motion giving him all favorable inferences that can be drawn from the facts. Conclusory statements or mere opinions are insufficient, however, to satisfy an opposing party's burden.

(citations omitted.)' " *TZ Land & Cattle Co. v. Condict,* 795 P.2d 1204, 1208 (Wyo.1990) (quoting *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 710 (Wyo.1987)) (citations omitted).

*Clark v. Industrial Company of Steamboat Springs, Inc.,* 818 P.2d 626, 628 (Wyo. 1991).

The foregoing standard required Mr. Lubnau, as the moving party, to make a prima facie showing that no genuine issue of material fact existed. Our prior cases have not discussed what an attorney must show to prove the absence of legal malpractice. *See Hickey v. Burnett,* 707 P.2d 741 (Wyo.1985). However, on several occasions we have discussed the elements necessary for establishing a prima facie case of medical malpractice. After establishing a duty, the plaintiff in a medical malpractice case

" 'has the obligation to establish (1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered.' [Citation.]"

*Metzger v. Kalke,* 709 P.2d 414, 421 (Wyo. 1985) (quoting *Harris v. Grizzle,* 625 P.2d 747, 751 (Wyo.1981)). We conclude that the test applicable in our medical malpractice cases should also apply in the analogous situation of a legal malpractice claim.

Under the *Harris* test, Mr. Lubnau was required to demonstrate that his conduct conformed to the accepted standard of legal care. We have not previously defined a standard of care for attorneys, although the required degree of care is really just a matter of applying the familiar "reasonable person" test to attorneys. Most jurisdictions follow some variation of the standard articulated in *Cook, Flanagan & Berst v. Clausing,* 73 Wash.2d 393, 438 P.2d 865, 867 (1968): A lawyer is held to "that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction." *See* Annotation, *Attorney's Liability for Negligence in Preparing or Conducting*

*Litigation*, 45 A.L.R.2d 5, 12 (1956); and 1 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE ch. 15 (3d ed. 1989). This level of care is generally consistent with our standard for medical doctors, *Siebert v. Fowler*, 637 P.2d 255, 257 (Wyo. 1981), and we adopt it as the standard for attorneys in Wyoming.

■ A party trying to establish the standard adhered to by a "reasonable, careful and prudent" lawyer must typically use expert testimony. *See generally* Michael A. DiSabatino, Annotation, *Admissibility and Necessity of Expert Evidence as to Standards of Practice and Negligence in Malpractice Action Against Attorney*, 14 A.L.R. 4th 170 at § 4 (1982); and *Vassos v. Roussalis*, 625 P.2d 768 (Wyo.1981), *after remand*, 658 P.2d 1284 (Wyo.1983) (medical malpractice). Expert testimony is necessary because most lay people are not competent to pass judgment on legal questions. An exception exists, however, when a lay person's common sense and experience are sufficient to establish the standard of care. *Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller*, 75 Ill.App.3d 516, 31 Ill.Dec. 357, 361–62, 394 N.E.2d 559, 563–64 (1979). In this case, Ms. Moore has not claimed that any of Mr. Lubnau's alleged breaches fell within this "common knowledge" exception. Consequently, we must determine whether Mr. Lubnau's expert testimony satisfied his burden of establishing the standard of care and whether his conduct conformed to that standard.

In support of his motion for summary judgment, Mr. Lubnau offered his own affidavit and deposition, the deposition of the judge who tried the case, and the opposing attorney's affidavit. Mr. Lubnau's affidavit addressed each of Ms. Moore's allegations and meticulously explained his actions. He concluded:

> I am familiar with the standard of care for attorneys handling divorce cases and trials in the Sixth Judicial District, Campbell County, Wyoming. In my opinion, I met or exceeded the standards of practice, and the standard of care, for attorneys practicing in the Sixth Judicial District, Campbell County, Wyoming. Ev-

ery action I took, and every decision I made, was done with much thought and effort, all to the benefit of my client. In my opinion, I exercised the skill, diligence and knowledge, and I applied the means and methods, which are reasonably exercised and applied under similar circumstances by practicing divorce attorneys in Campbell County, Wyoming.

■ The initial issue raised by Mr. Lubnau's affidavit is the viability of the so-called locality rule; i.e., whether merely satisfying the standard of care ordinarily exercised by attorneys in Campbell County was sufficient. Wyoming has moved away from the locality rule in the field of medical malpractice. *Roybal v. Bell*, 778 P.2d 108 (Wyo.1989); *Vassos*, 625 P.2d 768. In *Vassos*, we said: "Negligence cannot be excused on the grounds that others practice the same kind of negligence." 625 P.2d at 772. Commentators have applied similar reasoning to the field of legal malpractice:

> The ability of the practitioner and the minimum knowledge required should not vary with geography. The rural practitioner should not be less careful, less able or less skillful than the urban attorney. The fact that a lower degree of care or less able practice may be prevalent in a particular local community should not dictate the standard of care.

1 MALLEN & SMITH, LEGAL MALPRACTICE, *supra*, § 15.5 at 873. We agree with this reasoning and conclude that an attorney's required level of skill and ability is not defined by the individual locality in which he practices. The state is the more logical and generally accepted territorial limitation on the standard of care. *Russo v. Griffin*, 147 Vt. 20, 510 A.2d 436, 438 (1986); *Kellos v. Sawilowsky*, 254 Ga. 4, 325 S.E.2d 757, 758 (1985); *Hansen v. Wightman*, 14 Wash.App. 78, 538 P.2d 1238, 1247 (1975); 1 MALLEN & SMITH, LEGAL MALPRACTICE, *supra*. All attorneys must satisfy certain minimum requirements before being allowed to practice law in Wyoming. The level of knowledge required for admission to the bar does not vary from community to community. Altering the requisite degree of knowledge and care because an

attorney begins practicing in a certain community makes little sense. Accordingly, we hold that an attorney is held to that degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in Wyoming.

■ Our rejection of the locality rule renders Mr. Lubnau's affidavit insufficient because he only claimed to satisfy the standard of care for attorneys in Campbell County. Therefore, we must determine whether the judge's expert testimony established that Mr. Lubnau's conduct conformed to a statewide standard of care. The judge's deposition read as follows:

Q. Having been the trial court up in Campbell County for a little over five and a half years, are you familiar with the standard of care for practicing divorce trial attorneys in that judicial district?

A. Yes, I believe I am.

Q. Are you also familiar with the standard of care for practicing divorce trial lawyers throughout the State of Wyoming?

A. I believe I am. I practiced in a different part of the state, of course, primarily when I was on the bench—before I was on the bench and practiced divorce trials. And when I was on the bench, had the opportunity to hear cases in various parts of the state.... Now, not all of those cases were divorce cases, but I think—I mean, some of them were, so I tried—as a judge, tried cases in, I think, [all] but about two districts of the state.

Q. Do you have an opinion as to whether Tom Lubnau met or breached the standard of care for a practicing divorce lawyer in [the] Moore versus Moore trial?

A. Yes, I do.

Q. What is your opinion?

A. My opinion is that he more than met the standards of practice in the Sixth Judicial District and in the State of Wyoming.

....

Q. And in evaluating the standard of care for a practicing trial lawyer, would you agree that there is—that the parameters in which lawyers can practice and present their cases and still meet the threshold of a standard of care?

A. Certainly.

Q. Is it your opinion that Mr. Lubnau operated within those parameters?

A. Yes, it is.

The judge also commented on some of Ms. Moore's specific allegations. One of her claims was that Mr. Lubnau should have called the psychologist as a witness who wrote a report which favored granting custody of the daughter to Ms. Moore. Instead of calling that witness, Mr. Lubnau entered the report into evidence by stipulation. The judge thought that Mr. Lubnau acted properly because, by stipulating the report into evidence, he avoided possible impeachment of the report. Another claim was that Mr. Lubnau should have introduced evidence of Mr. Moore's purchase of sexual items from a catalog. The judge thought that the purchases were irrelevant as long as they were not connected to the child.

The judge's testimony is arguably flawed because it does not specifically state the applicable standard of care. Ideally, the judge would have described Ms. Moore's allegations of wrongful conduct, stated the ordinary manner in which Wyoming attorneys handle each situation, and then stated whether or not Mr. Lubnau's conduct conformed to that standard. The difficulty with such a scenario in this case is that it was virtually impossible to describe a standard of care for each alleged wrongdoing. Ms. Moore's long list of claims primarily concerned Mr. Lubnau's tactical errors. A typical example was her claim that Mr. Lubnau should have introduced evidence of the husband's purchase of sexual items from a catalog. Whether to introduce such evidence was essentially a matter of judgment. Some attorneys might have viewed it as being evidence of poor character and considered it to be relevant to the custody determination. Other attorneys would have viewed it as being a private matter

and irrelevant if it did not involve the child. The decision as to whether to introduce the evidence would also depend upon which judge was hearing the case. A reasonable, careful, and prudent attorney would have sound reasons for choosing either option. An expert witness could not state that the standard is to do one thing or another. When the attorney's acts are a matter of judgment, the expert must simply decide whether, in his opinion, the attorney's conduct was or was not reasonable under the circumstances of the individual case. This is what the judge did in this case, and we conclude that his testimony adequately demonstrated that Mr. Lubnau met the standard of care for attorneys in Wyoming.

■ Once Mr. Lubnau met his initial burden of proof, Ms. Moore was obligated to demonstrate through expert testimony that his conduct was not that of a reasonable Wyoming attorney. *Metzger*, 709 P.2d at 423. Her failure to submit countervailing expert testimony established that no genuine issue of material fact existed and that summary judgment was appropriate. *Rice v. Hartman, Fawal & Spina*, 582 So.2d 464, 465 (Ala.1991); *Boigegrain v. Gilbert*, 784 P.2d 849, 850 (Colo.Ct.App. 1989).

■ Ms. Moore's second issue on appeal is that the judge erred by not granting her motion for a rehearing of the summary judgment motion.[1] We review the lower court's denial of a W.R.C.P. 59(e) motion for an abuse of discretion. 6A JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 59.16 (2d ed. 1989); *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

■ The court explained in an opinion letter why it denied Ms. Moore's motion for a rehearing:

The expert's affidavit now provided in support of the rehearing motion is not newly discovered evidence. If it were, no cause of action would ever be concluded. [Ms. Moore] was to designate an expert months earlier and failed to do so. For the Court to allow it now as newly discovered evidence would make scheduling orders without any force or effect.

There was insufficient showing of excusable neglect or due diligence. This Court would have entertained time enlargement requests at the summary judgment hearing. Rule 59 is not designed as a substitute. The Court is without knowledge as to the efforts of [Ms. Moore] to locate an expert or why [Ms. Moore] was unsuccessful.

Ms. Moore argues that her failure to locate opposing expert witnesses was partially due to delays in taking Mr. Lubnau's deposition. Her potential expert witnesses apparently wanted to read his deposition before agreeing to testify. Our rules of civil procedure provide appropriate sanctions for dealing with parties who do not cooperate in discovery. *See* W.R.C.P. 37. If Ms. Moore encountered unreasonable delays in taking Mr. Lubnau's deposition, she could have availed herself of these sanctions.

Ms. Moore also attributes her lack of expert witnesses to the fact that Wyoming attorneys are reluctant to testify against one another, and we are sensitive to this claim. This hesitancy is not surprising in a bar as small and as cordial as Wyoming's. The facts of this case, however, do not support her claim that she could not find an expert to testify. Ms. Moore designated two expert witnesses on December 13, 1991. One witness withdrew but she could have submitted an affidavit from the remaining witness. As to the witness she found after the hearing, nothing in the

---

1. Ms. Moore's motion for a rehearing relied upon W.R.C.P. 59 without identifying any particular section of that rule. Mr. Lubnau's brief analyzes the motion as it if were for a new trial under W.R.C.P. 59(a). Obviously, the motion was not for a new trial because no trial had occurred. 6 JAMES WILLIAM MOORE & JEREMY C. WICKER, MOORE'S FEDERAL PRACTICE ¶ 56.26–1 (2d ed.

1988). We interpret the motion as being brought under W.R.C.P. 59(e), which provides a means for the trial court to alter or amend a judgment. Other courts have interpreted W.R.C.P. 59(e) as encompassing a motion to reconsider a summary judgment. *Backlund v. Barnhart*, 778 F.2d 1386 (9th Cir.1985).

record suggests that this expert could not have been located prior to the hearing.

Even if we assume that Ms. Moore could not procure an expert witness in the time required, her proper procedure would have been to seek additional time under our rules of civil procedure. Pursuant to W.R.C.P. 56(f), she could have submitted an affidavit setting forth the reasons why she was unable to file an opposing affidavit. *Harris*, 625 P.2d at 750. Alternatively, she could have filed a motion pursuant to W.R.C.P. 6(b) requesting additional time in which to file her affidavits. *Id.* Ms. Moore did not avail herself of the relief provided in either W.R.C.P. 56(f) or W.R.C.P. 6(b), and the trial court properly found that W.R.C.P. 59(e) is not a substitute for these rules when a person is seeking additional time.

Mr. Lubnau argues that he is entitled to receive the maximum fees allowable under W.R.A.P. 10.05 because no reasonable cause existed for this appeal. W.R.A.P. 10.05 requires that, in order for Mr. Lubnau to receive those fees, this Court must certify that no reasonable cause existed for Ms. Moore's appeal. We are persuaded that a reasonable cause for appeal existed, and we, therefore, decline to make the necessary certification.

Affirmed.

GOLDEN, Justice, specially concurring.

Although I agree with the decision of the majority to affirm the trial court's summary judgment order, I reach that result by a route differently traveled from the route traveled by the majority.

In June, 1989, the plaintiff hired the defendant to represent her in divorce proceedings filed against her by her husband. Of paramount concern in that action were custody of the parties' minor daughter and a fair distribution of the marital property.

The defendant's legal representation of the plaintiff ended in late September, 1989, about a week after a one and one-half day trial. Conducting the trial was district court judge Timothy Judson. As a result of the trial, the judge granted primary custody of the parties' minor daughter to the plaintiff's husband; he also divided the property.

Dissatisfied with the results of the divorce trial, the plaintiff pursued an appeal [1] and filed an action against the defendant in February, 1991, in which she alleged legal malpractice [2] and unlawful execution and seizure of a motor vehicle to satisfy delinquent legal fees.[3] With regard to the plaintiff's legal malpractice charge, she alleged in her complaint that her divorce lawyer had departed from accepted professional standards in the following particulars:

- failure to call at the trial expert and lay witnesses known to the defendant whose testimony would have been relevant to the determination of the custody of the plaintiff's minor daughter;
- failure at the trial to introduce testimony and exhibits as to the sexual practices of her husband which were relevant in determining the child's custody;
- failure at the trial to impeach or rebut the testimony of her husband and his witnesses by use of available depositions and witnesses whose testimony was known to the defendant;
- failure at the trial to present evidence available to the defendant which would have resulted in the trial court awarding her a greater share of the marital property than was awarded to her; and
- failure to ensure that the divorce decree embodied the trial court's decision as it appears in the trial transcript.

Following the defendant's answer, which denied the allegations of negligence and unlawful execution and seizure, the parties

---

**1.** *Moore v. Moore*, 809 P.2d 261 (Wyo.1991).

**2.** For an overview of such an action, *see* MICHAEL P. AMBROSIS & DENIS F. MCLAUGHLIN, *The Use of Expert Witnesses in Establishing Liability in Legal Malpractice Cases*, 61 TEMPLE L.REV. 1351 (1988); and WILLIAM D. FARBER, *Legal Malpractice in Domestic Relations*, PROOF OF FACTS, 44 AM. JUR.2D 377 (1986 & Supp.1992).

**3.** The issue concerning the alleged unlawful execution and seizure of a motor vehicle is not raised on appeal. We deem it waived.

engaged in discovery. On May 23, 1991, the plaintiff answered the defendant's written interrogatories. In her answers she listed and described all of the acts, errors and omissions of the defendant which she contended fell below the standard of care for a practicing Wyoming divorce attorney. Her list and description was about seven pages in length and can be divided into two discrete categories: trial and nontrial allegations. In the "nontrial" category fall the charges that the defendant failed to consult the plaintiff about the selection of an appraiser to appraise the value of the marital property; the inspection outside her presence of her papers and records by her husband's attorney; and the hearing to determine whether a certain attorney, against whom the plaintiff had negative feelings, would be appointed guardian ad litem for her daughter.

In the "trial" category fall the charges that the defendant failed to discredit the plaintiff's husband on cross-examination concerning prior inconsistent testimony and statements, his drinking problem, his abuse of animals, his unusual sex habits, and his violent temper; failed to call witnesses on the plaintiff's behalf who would have testified about her care of and bonding with her daughter; failed to present evidence to support her position as to a fair distribution of the marital property; failed to call as a favorable witness a certain child psychologist who had evaluated the parties and their daughter; and failed to object to, and move for a mistrial because of, an *ex parte* communication between the trial court judge and the child's guardian ad litem.

In July, 1991, at the plaintiff's request, the trial court set a date for a scheduling conference. As a result of that conference, the trial court entered a scheduling order. In pertinent part, the order required the plaintiff to designate expert witnesses by October 15, 1991, and the defendant to complete the depositions of those expert witnesses by October 31, 1991. The order further required the defendant to designate his expert witnesses by November 15, 1991, and required all discovery to be completed by December 16, 1991. Finally, the order established a trial date of March 30, 1992.

In late September, 1991, again at the plaintiff's request, the court entered an amended scheduling order which extended by fifteen days the dates on which the parties were to designate expert witnesses and the defendant was to have completed the depositions of the plaintiff's experts. The other dates in the scheduling order remained unchanged.

On November 4, 1991, a few days beyond the date on which the designation of the plaintiff's expert witnesses was due according to the amended scheduling order, the plaintiff filed a motion dated November 1, unaccompanied by supporting affidavit, seeking the trial court's order extending to November 15, 1991, the date on which the plaintiff must designate her expert witnesses. The plaintiff did not seek a hearing on this motion, none was held, and the trial court never entered on order extending the November 1 deadline.

Not until December 13, 1991, more than forty days after the plaintiff's expert witness designation was due, did the plaintiff file her expert witness designation. In the intervening time period, the defendant had timely designated his three expert witnesses who included the defendant himself and Timothy J. Judson, the trial court judge who had presided at the subject divorce trial and later returned to private law practice.

On December 20, 1991, the defendant filed his summary judgment motion with supporting materials which included testimony of his three expert witnesses in the form of either affidavits or deposition transcripts. Although the plaintiff opposed the defendant's motion, her supporting material included only lay testimony from herself and other lay witnesses, but not expert testimony. Noticeably absent from her supporting materials was any testimony from the expert witnesses she had designated tardily.

Following a hearing in late January, 1992, the trial court, in early February, 1992, issued its decision letter in which it announced it was granting the defendant's

motion. In its decision the trial court correctly observed, among other things, that in this legal malpractice case, as with medical malpractice cases, expert testimony is necessary to establish, as fact, that the defendant lawyer's conduct fell below the standard of care which would have been exercised by a reasonable prudent attorney in the same or similar circumstances. The trial court remarked that the plaintiff had failed both to offer expert testimony on that crucial issue of fact and to seek relief under the relevant rules of civil procedure to obtain additional time in which to obtain such testimony. Finding that no expert testimony had been presented to suggest that the defendant had departed from recognized standards of legal practice, the trial court granted the defendant's motion. The order was entered shortly thereafter.

We review a summary judgment *de novo* and may affirm the judgment on any proper legal ground, even one not used by the trial court. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 706 (Wyo.1987). The majority affirms the judgment based on the sufficiency of the testimony of the defendant's expert witness, Timothy Judson. I would hold that Mr. Judson's testimony was deficient[4] because it does not contain statements of the recognized standards of care applicable to the several allegations of negligence made by the plaintiff in her complaint, in her answers to interrogatories, and in her deposition testimony.

In past decisions we have taken a firm stand on what we require of an expert witness in a professional negligence case. We have made it clear that an expert witness must establish what the standard of care is and in what way the professional deviated from or complied with that standard. *See, e.g., Roybal v. Bell*, 778 P.2d 108 (Wyo.1989) (dental malpractice); *Greenwood v. Wierdsma*, 741 P.2d 1079 (Wyo.1987) (hospital negligence malpractice); *Metzger v. Kalke*, 709 P.2d 414 (Wyo. 1985) (hospital and medical malpractice);

*Vassos v. Roussalis*, 625 P.2d 768 (Wyo. 1981) (medical malpractice). If the supporting materials were deficient, we did not hesitate to refuse to grant summary judgment.

The majority acknowledges that the Judson expert testimony "is arguably flawed because it does not specifically state the applicable standard of care." Op. at pg. 1250. But then the majority justifies its departure from this court's usual swift reaction to such deficient expert testimony by declaring, without either evidentiary or legal support, that the plaintiff's allegations "primarily concerned Mr. Lubnau's tactical errors." Op. at p. 1250. Such tactical errors, the majority explains, are a matter of judgment as to which the expert witness may simply state his or her opinion whether the defendant attorney acted reasonably under the circumstances. I have grave concerns with the majority's departure from our long-standing case law and placing the court on such a slippery slope without the benefit of either evidentiary support or legal support. When the majority in a legal malpractice case is willing to so easily, and upon such minimal consideration of the plaintiff's numerous allegations, identify the defendant's various acts and omissions as matters of judgment, it runs the risk of being perceived as having established a double standard, *i.e.*, it applies a "matter of judgment" standard for the legal profession but a "reasonable care" standard for the other learned professions. This court has rejected the notion of permissible errors of honest judgment in the context of allegations of medical malpractice. *Kobos v. Everts*, 768 P.2d 534, 536–39, 549–50 (Wyo.1989) (Cardine, C.J., specially concurring). I would feel much more comfortable with the majority's treatment of the defendant's alleged "tactical errors" if the defendant's expert witnesses had provided appropriate opinion testimony identifying the plaintiff's numerous allegations as falling within the category of trial tactics as to which the ordinary practicing attorney must exercise good

---

4. Similarly, I would hold that the other expert testimony offered by the defendant was, for the same reason, also deficient.

faith judgment. Indeed, authority exists that a trial lawyer is immune from liability for alleged tactical errors made in good faith during the course of a trial. *See, e.g.,* RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE, §§ 24.7, 24.34 (3d ed. 1989 & Supp.1992) and cases cited therein; AMBROSIO AND MCLAUGHLIN *supra,* n. 2, at 1367–68 and cases cited therein; JOHN J. THOMASON, *A Plea for Absolute Immunity For Errors in Trial Judgment,* 14 WILLIAMETTE L.J. 369 (1978); and JODY KEYS, *The Use of Expert Testimony in Actions Against Litigation Attorneys,* 14 WILLIAMETTE L.J. 425 (1978). Although a good number of the plaintiff's allegations fall under the "trial tactics" umbrella, some do not; the majority opinion fails to discuss those. Thus, the majority opinion does not seem to cover the defendant's alleged failures to consult the plaintiff about the selection of an appraiser to appraise the value of the marital property; the inspection of her papers and records by opposing counsel; and the hearing to determine the guardian ad litem for her daughter.

Because of my foregoing concerns, I prefer to uphold the judgment below on a different ground. The trial court ordered and held a scheduling conference which resulted in a scheduling order. As Wyo. R.Civ.P. 26(f) provides, "[f]ollowing the discovery conference, the court shall enter an order * * * establishing a plan and schedule for discovery * * *." The plaintiff failed to comply with the amended scheduling order when she did not timely designate her expert witnesses. The trial court appropriately recognized that this legal malpractice case was one in which the testimony of expert witnesses was necessary to establish, as factual matters, the standards of care with respect to each allegation of wrongdoing, whether the defendant's conduct complied with or deviated from those standards of care, and causation. We have not heard the plaintiff claim that some or all of her allegations were of such nature that the standard of care and defendant's compliance or deviation were within the lay person's common knowledge, rendering unnecessary expert testimony. Since expert testimony was necessary for the plaintiff to present her case and since she had violated the trial court's amended scheduling order with regard to designating expert witnesses, when the trial court held the summary judgment hearing the plaintiff was unable to present her case. Under the provisions of Wyo.R.Civ.P. 37(b)(2)(C), if a party fails to obey an order entered under Rule 26(f), the trial court may, among other things, make an order rendering judgment by default against the disobedient party. The trial court exercises broad discretion with regard to such sanctions. *Matter of Estate of Mora,* 611 P.2d 842, 846 (Wyo.1982); *see also, Gooder v. Roth,* 788 P.2d 611, 614 (Wyo.1990).

I would consider the trial court's judgment as a default judgment. I would affirm that judgment as I find the trial court did not abuse its discretion under the circumstances. Other jurisdictions have upheld summary judgments in legal malpractice actions under similar circumstances. *See, e.g., Schmidt v. Hinshaw,* 75 Ill. App.3d 516, 31 Ill.Dec. 357, 363, 394 N.E.2d 559, 565 (1979). *See also, Lipscomb v. Krause,* 87 Cal.App.3d 970, 151 Cal.Rptr. 465, 468 (1978) (affirmed trial court's order granting attorney's motion for nonsuit when plaintiff failed to present expert testimony); *Shanley v. Barnett,* 168 Ill.App.3d 799, 119 Ill.Dec. 592, 595–96, 523 N.E.2d 60, 63–64 (1988) (plaintiff's failure to obtain expert testimony to establish attorney's negligence rendered summary judgment for attorney appropriate); and *Fishow v. Simpson,* 55 Md.App. 312, 462 A.2d 540, 544 (1983).