Karen S. PETERSON, Appellant
(Plaintiff),

v.

John M. SCORSINE, Appellee
(Defendant).

No. 94–105.

Supreme Court of Wyoming.

June 30, 1995.

Karen S. Peterson, Laramie, pro se.

Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The primary issue to be resolved in this case is whether theories of recovery alleged by Karen S. Peterson (Peterson) against her attorney, John M. Scorsine (Scorsine), aside from a claim of legal malpractice, serve to avoid a summary judgment against her. Peterson's claims stem from Scorsine's representations of her during an ongoing dispute with her ex-husband over his failure to comply with certain provisions of their 1982 divorce decree. Her contentions are that Scorsine was subject to suit for negligence, breach of contract and breach of his fiduciary duties, all argued to be different theories from the traditional claim for legal malpractice. Peterson also asserts no expert witness was required to demonstrate attorney malpractice; the material presented by Scorsine was insufficient to sustain the trial court's grant of summary judgment; and she disputes the court's finding that she has suffered no damages. We agree with the trial court that this is a case seeking recovery for attorney malpractice, and Peterson's alternative theories are subsumed by the malpractice claim. It is controlled by *Moore v. Lubnau*, 855 P.2d 1245 (Wyo.1993). The decision of the trial court is correct in this regard; there are no genuine issues of material fact; and the summary judgment is affirmed.

In the Brief of Appellant, Peterson presents the following issues for review:

A. The trial court erred in granting appellee's motion for summary judgment based on *Moore v. Lubnau*, 855 P.2d 1245 (Wyo.1993) because:

    a. Appellant's claims are based on breach of contract and breach of fiduciary duties, which are ethical duties owed clients, and not on a negligence theory of malpractice.

    b. The specific duties in appellant's pleadings that she claims appellee handled negligently lie well within the lay person's common sense and experience sufficient to establish breach of appellee's fiduciary duties of competence and diligence. Appellant has not claimed ap-

pellee's negligence of these duties in order to establish a prima facie case for negligence.

c. Although appellant has found some authority in other jurisdictions that the fiduciary duty of competence may *sometimes* require expert witness testimony, neither of appellee's expert witnesses testified as to appellee's competence (skill, diligence or knowledge). Neither provided any statements of recognized standards for this duty or any other duty for attorneys who are practicing in the state. Appellant has documented considerable evidence with numerous examples of appellee's incompetence and lack of knowledge.

B. The trial court erred in granting appellee's motion for summary judgment because the record establishes ample evidence of breaches of appellee's ethical (fiduciary) duties of loyalty and his responsibility to keep appellant informed and to protect her right to make decisions. Not only has appellee failed to provide any evidence to indicate he has not breached these duties, but by his own statements under oath, he acknowledges his breaches of the duties of loyalty and his responsibility to protect appellant's right to make decisions.

C. Breaches of a fiduciary relationship in any context comprise a special breed of cases that do not require strict adherence to proving the causation/damages connection inherent in negligence actions; therefore, speculation as to proximate causation is irrelevant.

D. The trial court erred in granting appellee's motion for summary judgment because the issue of "damages suffered" in its Finding # 8 is not essential for claims of breach of fiduciary duty. Its ruling, however, that "personal service is required to be made on a defendant in a domestic relations action filed subsequent to the decree of divorce" does not appear to be consistent with either the federal nor Wyoming Rules of Civil Procedure. Appellant can find no case law to establish this "requirement." For her own and others' future edification in similar situations when attempting service on out-of-state defendants, appellant would appreciate a ruling on this part of the trial court's finding.

In the Brief of the Appellee, Scorsine states the issues to be:

1. Did the district court correctly grant summary judgment to attorney John Scorsine where he supported his motion with expert testimony and appellant did not rebut Mr. Scorsine's summary judgment motion with any opposing expert testimony?

2. Did the district court correctly grant summary judgment to attorney John Scorsine where plaintiff's evidence of proximate causation and damages was speculative?

3. Should summary judgment also be affirmed where plaintiff has made no effort to mitigate or avoid her alleged loss?

Peterson and her ex-husband, Stephen L. Peterson (Mr. Peterson), were divorced in August of 1982 by a decree of divorce entered in Sweetwater County. Peterson was the plaintiff in the divorce action, and Mr. Peterson, although served with process in Virginia, did not appear in the Wyoming court, answer the complaint, or come to Wyoming for the hearing. The decree awarded Peterson custody of the two minor children of the marriage, and Mr. Peterson was ordered to pay $400 per month in child support for both children. In addition, the decree provided Mr. Peterson "should be awarded normal and reasonable visitation privileges," but it was not specific as to times or places for visitation.

The decree did not address division of the parties' real and personal property located in Virginia. The Wyoming court had jurisdiction over the *res* of the marriage situated in Wyoming. That included any property in Wyoming, the marriage relationship, and the children. The Wyoming court could have divided the Virginia real estate and personal property located in Virginia. Since Mr. Peterson had not appeared in the Wyoming court at the time of the divorce, however, any action to enforce the division of any property located in Virginia necessarily would be commenced and undertaken in Virginia. *See Kane v. Kane*, 577 P.2d 172, 175–76 (Wyo. 1978). We assume this to be the reason the

Wyoming court made no division of the Virginia real or personal property.

After the divorce, Mr. Peterson failed to make any child support payments during the following year. In September of 1983, Peterson filed an Application for Child Support Services in Sweetwater County, and it was served on Mr. Peterson in Virginia. Both parties then employed Virginia attorneys to pursue the matter in the domestic relations court of Chesterfield County, Virginia. The parties' disputes never were adjudicated by the Virginia court and, by June of 1985, Peterson and Mr. Peterson still were arguing over $4,000 in back child support; disposition of the marital home and personal property in Virginia; the extent and expense of visitation; and whether Wyoming or Virginia was the appropriate jurisdiction to deal with these post-divorce issues.

In June of 1985, Mr. Peterson filed a Petition to Modify Divorce Decree in Sweetwater County. That petition asserted Mr. Peterson had been paying $500 per month in child support since February, 1984, and he asked the court to "provide specific times and conditions of reasonable visitation with his children." When she was served with Mr. Peterson's pleading, Peterson employed Scorsine to represent her. In an Answer and Counterclaim filed on behalf of Peterson, Scorsine requested a judgment in the amount of $6,000 for past-due child support; the posting of a bond by Mr. Peterson in that amount; and a requirement that Mr. Peterson provide adequate health insurance for both children.

Mr. Peterson came to Wyoming to be deposed on January 2, 1986, and Scorsine and Mr. Peterson's attorney discussed the possibility of settlement. Mr. Peterson was not deposed. Instead, Peterson and Mr. Peterson agreed to compromise and settle their differences. This settlement was memorialized in a ten-page Agreement and Stipulation dated January 31, 1986, which they executed and formally acknowledged. It was filed with the court on February 7, 1986 and, on June 26, 1986, the court issued an Order Modifying Decree of Divorce, which expressly incorporated the provisions of the Agreement and Stipulation.

The court's order required Mr. Peterson to ship Peterson's remaining personal property to her; to pay $500 per month in child support; to continue this level of support for the children until they were twenty-one, provided that his relationship with them "normalized;" to pay $4,000 in overdue child support; to pay $5,000 to Peterson for her share of his profit-sharing plan; to pay Peterson $16,000 for her equity in the real property in Virginia; and to pay half of the medical expenses for the children that were not covered by insurance. Mr. Peterson was to pay Peterson $12,500 within thirty days of the execution of the agreement, and the remaining $12,500 within one year. The parties agreed that Peterson would place their daughter in counseling in an effort to establish normalcy in her relationship with her father; would have the daughter continue with the counseling until she reached majority or until the counselor concluded the counseling; would "not discourage the children from visiting with Mr. Peterson;" and would "foster reasonable visitation." The Agreement and Stipulation also provided that the Wyoming court had personal jurisdiction over Peterson and her husband, and a party breaching the agreement would be required to pay for the nonbreaching party's attorney fees necessary to enforce the order of the court.

Mr. Peterson did pay $25,000 to Peterson, which included the $5,000 owed on the profit-sharing plan, and he did make the monthly child support payments. Mr. Peterson, however, did not ship the personal property to Peterson; he stopped paying child support for the daughter on her eighteenth birthday; [1] and he did not reimburse Peterson for one-half of the noninsured medical expenses incurred by the children during the years 1986 through 1990.

In 1989, Peterson again contacted Scorsine seeking representation in enforcing the provisions of the court order which Mr. Peterson was ignoring. She also sought Scorsine's

---

1. On her eighteenth birthday, the daughter was attending school in Arizona where eighteen is the age of majority. Mr. Peterson erroneously believed he could terminate the support payments under the order since the daughter was a resident of Arizona.

representation to effect an increase in the monthly child support payments. After correspondence and negotiation with Mr. Peterson's attorney failed to resolve the remaining disputes between the parties, Scorsine filed a Petition for Order to Show Cause, Reduce Certain Matter to Judgment, and Modification of Support on March 2, 1990. Mr. Peterson avoided service of process in Virginia, and the hearing date on the petition Scorsine filed had to be rescheduled numerous times. Ultimately, a private investigator served Mr. Peterson with the pleading, and his Wyoming attorney then filed a response to the petition. The matter was set for hearing on December 21, 1990.

On the date set for the hearing, at Scorsine's request, he met with Mr. Peterson's attorney and the district judge in chambers to discuss their clients' contentions, and the evidence each side would offer. Neither of the Petersons was present during this dialogue. Scorsine and Mr. Peterson's attorney presented their arguments, and the judge then explained how he would rule upon the issues if the evidence presented were as it was represented. Those conclusions of the judge in chambers subsequently were incorporated in an Order on Petition to Show Cause, which was filed June 11, 1991. That order required Mr. Peterson to pay back child support for the months until the daughter was nineteen; to pay an increase in the son's child support from $250 to $350 monthly, with an additional increase to $450 monthly, if the son should attend college; to pay $3,250 in back child support; to pay one-half of the undisputed medical bills without delay; and to ship, at his expense, Peterson's personal property to her. In addition, the order included specific grounds for deviating downward from the statutory child support guidelines;[2] and subjected Peterson to a possible $1,000 sanction if she interfered with Mr. Peterson's exercise of his rights of visitation.

The court, as a final matter, concluded Mr. Peterson's relationship with the daughter had not normalized and, thus, her child support would terminate on her nineteenth birthday. Sometime after the hearing date, but before the district court entered its order of June 11, 1991, Peterson terminated her attorney-client relationship with Scorsine.

Peterson filed her original complaint in this action on May 5, 1993. She alleged claims against Scorsine arising from the employment in 1986 and, again, in 1990. In an amended complaint, filed on December 20, 1993, Peterson appeared to seek damages only from the 1990 settlement negotiations.[3] An examination of Peterson's amended complaint, which she endeavors to support in her brief on appeal, recalls Prime Minister Winston Churchill's quote captured in *Bd. of Trustees, Laramie County Sch. Dist. No. 1 v. Spiegel*, 549 P.2d 1161, 1167 (Wyo.1976), "a riddle wrapped in a mystery inside an enigma * * *."

The amended complaint alleges Scorsine violated Peterson's right to due process because she was not able to testify at the December 21, 1990 hearing; that, in some way, Scorsine threatened her or fraudulently misrepresented facts to keep her from testifying at the hearing; Scorsine breached contractual duties in failing to perform work for her in a skillful and professional manner; Scorsine breached his fiduciary duties to her by converting monies owed to her; and Scorsine was generally negligent. In her allegations of negligence, Peterson claimed that Scorsine failed to file a breach of contract action on her behalf; his attempts at service of process were defective; he failed to complete proper discovery and was not competent or prepared to present her case at the December 21, 1990 hearing; he delayed taking action on her behalf in an unreasonable fashion; and when action was taken, it always was wrong.

---

2. The grounds articulated were:

    a. The costs to be incurred by the father in exercising visitation.

    b. The ability of the father to provide health insurance for the child.

    c. The violation of visitation provisions by Karen S. Peterson.

    d. The relative income of the parties.

3. The thrust of the amended complaint seems consistent with recovery from the 1990 settlement negotiations, but Part C.i. of Peterson's amended complaint accuses Scorsine of:

    Failing to take necessary and timely breach-of-contract action on various issues of a 1986 agreement for periods ranging from six months to nearly four years to not at all * * *.

Scorsine filed a pleading entitled "Defendant Scorsine's Motion for Summary Judgment and/or Default Judgment," on March 14, 1994. A hearing was held on that motion on March 25, 1994, and both parties presented oral argument to the court. Scorsine also presented the depositions of two expert witnesses, Mr. Peterson's attorney and the district judge who handled the Peterson case, while Peterson offered only the affidavits of her two children to support her opposition to the summary judgment. On April 8, 1994, the district court executed its Order Granting Summary Judgment, and it was entered on April 12, 1994. Peterson takes this appeal from that order.

To the extent the Amended Complaint alleges negligence, we are satisfied that aspect of the case is resolved by our opinion in *Jackson State Bank v. King*, 844 P.2d 1093 (Wyo.1993), where, in response to a certified question from the United States Court of Appeals for the Tenth Circuit, we held the comparative negligence statute did not apply to require the reduction of a plaintiff's recovery in a legal malpractice action by his percentage of fault. In that case, we said:

> We, therefore, hold that § 1–1–109(a) [1977] does not bar recovery by a plaintiff in a legal malpractice action, which necessarily is based on claims for breach of contract and breach of fiduciary duty.

*Jackson State Bank*, 844 P.2d at 1096.

The facts in this case are very comparable to those in *Moore*, 855 P.2d 1245. The Moores were divorced in 1989, and Mrs. Moore then sued Lubnau for legal malpractice because she was not awarded custody of her daughter, and she believed the distribution of the marital assets was not equitable. In particular, Moore urged that she would have been awarded custody if testimony concerning the sexual practices of Mr. Moore had been presented. Peterson contends testimony concerning her ex-husband's alleged "psychosis" at the hearing scheduled for December 21, 1990 would have demonstrated that he was incapable of a "normalized" relationship with his daughter. Peterson then builds on that claim by urging child support for the daughter would have continued after the daughter reached age nineteen, and her

son would have received more support pursuant to the statutory child support guidelines if she had been able to demonstrate that her ex-husband was incapable of a normal relationship with his children.

This summary captures the essence of Peterson's claim of denial of due process, and it also seems to encompass her overriding complaint against Scorsine for malpractice. In making these assertions, Peterson ignores the 1986 Agreement and Stipulation by which she agreed to a provision terminating the daughter's support at age nineteen if the daughter's relationship with the father could not be normalized. She also gives no cognizance to the findings incorporated by the trial court in its Order on Petition to Show Cause which were invoked to justify deviation from the guidelines.

In *Moore*, 855 P.2d at 1248, by quotation, we held the elements to be established for legal malpractice are the same as for medical malpractice. We summarized, quoting from *Orcutt v. Miller*, 95 Nev. 408, 595 P.2d 1191, 1193 (1979), which was adopted for our state in *Harris v. Grizzle*, 625 P.2d 747, 751 (Wyo.1981), for medical malpractice cases:

> In a medical malpractice action a plaintiff confronted with a motion for summary judgment has the obligation to establish (1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered.

It follows Peterson had to establish Scorsine's representation departed from the standard of care a reasonably prudent attorney would exercise under similar circumstances. As we also stated in *Moore*, 855 P.2d at 1248, quoting *Cook, Flanagan & Berst v. Clausing*, 73 Wash.2d 393, 438 P.2d 865, 866–67 (1968):

> We therefore hold that the correct standard to which the plaintiff is held in the performance of his professional services is that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction.

To establish legal malpractice, a party normally must rely on expert testimony because it is not in the purview of lay persons to evaluate the propriety *vel non* of an attorney's actions in representing his client. The only exception to this requirement is the instance in which a lay person's background and common sense are sufficient to establish the appropriate standard of care. *See Moore*, 855 P.2d at 1249. It was incumbent upon Scorsine, as the moving party, to demonstrate there was no genuine issue of material fact as to whether, in his representation of Peterson, he met or exceeded "that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer." The essence of Peterson's claims against Scorsine are for legal malpractice, and those claims must be addressed under our ruling in *Moore*.

Scorsine did present expert testimony on his behalf that establishes he represented Peterson as a reasonable, careful, and prudent attorney. On examination by Scorsine's attorney, the attorney who had represented Mr. Peterson testified as follows:

Q. Are you familiar with the standards of care for practicing divorce and domestic relations lawyers in Wyoming?

A. Yes.

Q. Do you have an opinion as to whether John Scorsine met or breached the standard of care for practicing domestic relations lawyers in A, the 1985–1986 modification matter, and B, the 1990–91 contempt matter?

A. Yes and yes.

Q. Okay. What is your opinion in both of those matters?

A. Well, I—I had a client [Mr. Peterson] who hired me to increase his visitation. He ended up far worse off than if he never had gone to trial. I can only say he was well above the standard of care in both situations. I usually get much better results than that.

Q. Would you agree that there are parameters in which lawyers practice and present their cases and still comply with the standard of care?

A. Yes.

Q. Is it your opinion that Mr. Scorsine operated within those parameters in the 1985–86 modification matter and the 1990–91 contempt matter?

A. Yes.

Q. As the attorney that represented the ex-husband for both proceedings do you believe Mr. Scorsine acted prudently and in the best interest of his client in resolving both of those cases instead of proceeding to a full-blown trial in both cases?

A. Prudent and vigorously especially the second proceeding. The first proceeding I think it was just a little more congenial but the second one he made—he definitely made a difference, I think.

Q. Do you believe Mr. Scorsine complied with the applicable standards in resolving these cases pursuant to the terms and conditions contained in the final settlement agreement and related to the court orders?

A. Yes.

\*      \*      \*      \*      \*      \*

Q. Do you have an opinion as to whether or not Mr. Scorsine exercised reasonable judgment and tactical strategy to both of these cases?

A. As I said he ended up with results better than he would have if he never touched the situation, so I think he did well.

The trial judge who had handled the Peterson case also testified that Scorsine acted in a reasonable, careful, and prudent manner:

Q. Do you have an opinion, based on your review of the different file materials and your independent recollection, as to whether John Scorsine met or breached the legal standard of care for a practicing domestic relations lawyer with regard to this 1990 contempt matter?

A. I don't have any independent recollection of the case \* \* \*. But based on the rather detailed Findings, it's my opinion that he did not breach his duty.

The trial judge also testified:

Q. Mrs. Peterson has alleged in this legal malpractice case that John Scorsine should have insisted that the 1990 contempt pro-

ceeding be tried to you in the courtroom and not resolved in chambers or resolved in a settlement of some type.

My question is this: Given all of the evidence and the proffers of evidence and the circumstances that existed on December 21, 1990, do you believe Mr. Scorsine's recommendation to resolve this case, pursuant to your Findings in chambers, falls within the category of trial tactics as to which the ordinary practicing attorney should exercise good faith judgment?

A. Yes. I think he did the proper thing. And in looking at the Order it would appear that most of the Findings were in his favor. I'm talking about Mr. Scorsine and Mrs. Peterson.

■ This expert testimony, without refutation, serves to demonstrate there was no genuine issue of material fact as to whether Scorsine met the applicable standard of care in his representation of Peterson. Scorsine presented expert testimony demonstrating his conduct conformed to that of a reasonably prudent attorney, while Peterson failed to offer any expert testimony to demonstrate the existence of a genuine issue of material fact. We can affirm the summary judgment by applying *Moore.*

We will consider, however, the remaining contentions of Peterson even though we are satisfied the claims for breach of contract and fiduciary duty are subsumed by the legal malpractice claim which is governed by *Moore.* We find nothing in the record to suggest Scorsine coerced Peterson into not testifying or somehow misrepresented the facts concerning the settlement reached without a trial. The record discloses, conversely, that the good judgment of Mr. Peterson's attorney and Scorsine, on behalf of their clients, resulted in a settlement and the issuance of the court's order entered on the contempt petition filed by Scorsine. As the district court noted, the public policy in this state encourages the settlement of disputes, which is what occurred in this instance.

■ As we understand Peterson, she asserts Scorsine should have filed a breach of contract action based upon Peterson's failure to abide by the parties' 1986 Agreement and

Stipulation, which was incorporated by reference into the court's order. She contends a cause of action for breach of that Agreement and Stipulation should have been filed in federal court invoking its diversity of jurisdiction. The Order Modifying Decree of Divorce in 1986 adopted the Agreement and Stipulation, which was merged into the order. The 1991 Order on the Petition to Show Cause for noncompliance with the 1986 order was intended to enforce the 1986 order and did not relate to the Agreement and Stipulation as a separate document. We are satisfied, since the agreement merged into the judgment, that it was appropriate to bring the action to enforce the order. *Pauling v. Pauling,* 837 P.2d 1073 (Wyo.1992). Peterson's contention that an action for breach of contract should have been filed has no merit.

■ We understand the allegation that Scorsine breached his fiduciary duties relates to a radial arm saw. Mr. Peterson's attorney tendered a check to Scorsine from Mr. Peterson in the amount of $300 as payment for the saw, but Scorsine did not cash that check since Peterson was asking $450 for the saw. During his deposition, when asked by Peterson what had happened to the check, Mr. Peterson's attorney replied it could be in his file or he might have sent it back to Mr. Peterson. He stated he had tendered the check to Scorsine who either had refused it or sent it back. Scorsine's attorney continued with this topic with a hypothetical question addressed to the judge. The judge stated clearly it was not a breach of the standard of care to return a check marked "full payment" which was drawn for less than the amount demanded by the client. In response to a question as to whether returning the check amounted to a conversion, the judge stated he would have sent the check back under those circumstances. This testimony makes it clear Scorsine did not breach a fiduciary duty with respect to the $300 check but, instead, simply followed Peterson's directions to accept nothing less than $450 for the radial arm saw.

We further identify no valid criticism of the efforts by Scorsine to enforce the provisions of the 1986 Agreement and Stipulation which were incorporated in the court's Order

Modifying Decree of Divorce issued on June 26, 1986. Peterson appears to contend that, because Mr. Peterson was in contempt of the order entered in 1986 on a continual basis from 1986 to 1990, Scorsine should have taken enforcement measures during that period. Peterson's contention is unrealistic. Scorsine had no authority to act on Peterson's behalf until she came to him, retained his services once again, and advised him of the provisions of the 1986 order that were not being met. Then Scorsine would have had authority to undertake some specific action to enforce the order. Peterson did not do this until 1990, and we can identify no duty on the part of Scorsine to follow up with enforcement of the 1986 order until asked by his client to do so.

◼ Scorsine closed Peterson's file after successfully negotiating the Agreement and Stipulation incorporated in the 1986 order. He did not consider himself employed by Peterson until she came to him the second time in 1990. This was Scorsine's approach to his practice of law and representation of clients, and we find no fault with it. Peterson questioned one of Scorsine's expert witnesses, the attorney for her former husband, about this approach. The attorney replied it was fairly standard to consider the case completed once settlement was achieved. He testified it was typical practice to treat enforcement of the order based upon the settlement as a new action which required the rehiring of the attorney. This testimony is dispositive of the propriety of Scorsine's management of his legal practice.

◼ We cannot identify material in the record which would serve as "ample" evidence that Scorsine breached any ethical duty of loyalty by failing to keep Peterson informed, or that he failed to protect her right to make decisions. The only evidence in this regard was presented by Peterson, and her testimony was uncorroborated. When asked by Scorsine's attorney what her main criticism was of Scorsine, Peterson stated:

A. Lack of communication, telling me what he's doing, or asking me how I feel, or what I want to do about it. He didn't tell me much of anything.

This criticism by Peterson of Scorsine is somewhat elusive. She cannot give concrete examples in her deposition of what information Scorsine failed to communicate or how she was damaged by the lack thereof. Her assertion does not offer a genuine issue of material fact that would preclude summary judgment.

As a final matter, there is no evidence in the record of improper discovery efforts on Scorsine's part and, certainly, the abortive attempts to serve process on Mr. Peterson in Virginia did not constitute malpractice. He was not responsible for the fact that process could not be served. Peterson suggests we should analyze whether "personal service is required to be made on a defendant in a domestic relations action filed subsequent to the decree of divorce." We decline an advisory opinion on this academic question that has no pertinence in our resolution of this case.

The district court's Order Granting Summary Judgment to Scorsine is affirmed in all respects.