In re Leslie William LARSEN, d/b/a Larsen Farms, d/b/a LT Trucking, and Mary DeAnn Larsen, Debtors.

**Bankruptcy No. 94–20052.**

United States Bankruptcy Court,
D. Wyoming.

July 18, 1997.

Larry Robert Murray, Assistant U.S. Attorney, District of Wyoming, Cheyenne, WY, for U.S.

Georg Jensen, Cheyenne, WY, for Debtors.

Sharon A. Dunivent, Standing Chapter 13 Trustee, Cheyenne, WY, pro se.

## ORDER ON MOTION TO COMPEL TURNOVER OF PROCEEDS TO THE IRS

PETER J. McNIFF, Chief Judge.

THIS MATTER is before the court on the motion of the United States for an order requiring the chapter 13 trustee, Sharon A. Dunivent, to turn over proceeds in her possession to the Internal Revenue Service (IRS). The debtor, Mary DeAnn Larsen objected. Mrs. Dunivent seeks direction on proper distribution of the funds in question.

On June 24, 1997, the court held a hearing on the motion and on Mrs. Larsen's motion to strike, in which she alleged that the IRS could not have the matter heard except as an adversary proceeding. At the hearing, that motion was withdrawn. The court has considered the applicable law, the testimony and other evidence and, being fully advised, is prepared to rule.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The matter is a core proceeding pursuant to § 157(b)(2)(A) & (O).

The facts are not disputed. In 1989, Leslie and DeAnn Larsen filed a chapter 7 petition in this court. They were represented by Mr. Frank Andrews. During 1989, the Larsens sold stock which created a federal income tax liability on the capital gains. They did not elect to file a short year tax return for 1989. Consequently, the tax debt was not a claim against the chapter 7 estate, and the Larsens were left after discharge with a large tax liability.

In both 1990 and 1992, the IRS filed a notice of tax lien, securing the taxes with basically all of the Larsens' property. Larsens filed this chapter 13 case on January 27, 1994, creating a dispute concerning what property secured the IRS claim.

Also in January 1994, Larsens filed a state court action against Mr. Andrews alleging two claims for relief, attorney malpractice (sounding in negligence and other torts) and breach of contract. The Larsens claimed damages arising from Mr. Andrews' alleged omissions to provide proper tax and bankruptcy advice.

The IRS and the Larsens reached an agreement in this chapter 13 case which determined the extent of the secured IRS claim. The order approving the agreement (Agreed Order) was entered on October 26, 1994 and states in relevant part:

[T]he defendant (IRS) shall have a lien in the following property to the extent the debtor (sic) had any interest therein on the date of filing the chapter 13 petition and the debtor (sic) shall treat such secured claim by providing the payment thereof outside the plan from any proceeds realized thereon: ...

B. Any net recovery on the debtors' suit against their former counsel for alleged malpractice related to damages accrued up to the date of filing the chapter 13 petition herein.

Mrs. Larsen states here that between May 17, 1994 and January 1995, Mr. Andrews retaliated against the Larsens because they had filed the malpractice action. This retaliatory conduct allegedly consisted of actions to encourage and aid the prosecution of Mr. Larsen for securities or bankruptcy fraud. The record is unclear as to the specific counts of the subsequent indictment.

On March 30, 1995, Larsens amended the complaint against Mr. Andrews to include a claim for breach of fiduciary duty. The claim alleged malicious and retaliatory conduct and the disclosure of information pertaining to the Larsens' (chapter 7) bankruptcy case, without the clients' permission and to their detriment. The complaint does not state any specific damage amounts relating to any of the claims for relief.

On November 5, 1995, Mr. Larsen died. Mrs. Larsen continued as a debtor in this case. On November 29, 1995, Mrs. Larsen on behalf of herself and the probate estate responded to Mr. Andrews' motion for sum-

mary judgment on the breach of fiduciary duty claim. The response describes the factual basis for the claim, including a November 9, 1992 (pre-chapter 13) letter which contained "a not-so-veiled threat" and May 1994 communications with federal authorities which allegedly caused a subsequent indictment of Mr. Larsen.

In February 1996, Mrs. Larsen settled the state court action against Mr. Andrews. The Settlement Agreement and Release (Settlement Agreement) states in relevant part:

> The parties agree that payments made pursuant to this agreement are attributable to, and paid in settlement of, Plaintiffs' claim for Breach of Fiduciary Duty only, and not for any other claim.

and

> except as otherwise stated herein, Mary DeAnn Larsen ... do RELEASE AND FOREVER DISCHARGE Frank M. Andrews, Jr. ... from any and all claims, actions and damages which arose or could have arisen from the breach of fiduciary duty or any other claim which was asserted, was attempted to be asserted or could have been asserted against them ... in Civil Action Number 28038, currently pending before the District Court for the Ninth Judicial District of the state of Wyoming.

On November 11, 1996, after the probate court approved the settlement, a Stipulation of Dismissal With Prejudice was filed. The parties agreed that "plaintiffs' First Amended and Supplemental Complaint, and this entire case, can and should be dismissed with prejudice for the reason that the parties have compromised and settled all of their disputes and differences." Mrs. Larsen received $91,000, payable in structured payments.

The payments made from the settlement were transmitted from the clerk of court in Fremont County to the chapter 13 trustee to satisfy Mrs. Larsen's chapter 13 plan payments. The IRS, believing the money was settlement proceeds encumbered by the IRS lien pursuant to the October 26, 1994 tax claim settlement, filed this motion.

Mrs. Larsen contends that the funds were paid to settle the breach of fiduciary duty claim only. She argues that Mr. Andrews' alleged misconduct giving rise to that claim and the consequent damages occurred after the chapter 13 case was filed, and therefore, the IRS lien does not attach to the funds.

## Conclusions

■ This dispute involves the interpretation of the relevant documents to establish whether the settlement proceeds from the malpractice action are encumbered by the IRS lien. The IRS argues that the language of the documents is clear and unambiguous, and that the funds were paid in consideration of the settlement of the prepetition claims for relief against Mr. Andrews.

The debtor presented testimony that explained and elaborated on the language of the documents and that explained the nature and timing of the breach of fiduciary duty claim. She contends: that the first two claims were difficult to prove and hence, valueless; that the breach of fiduciary duty claim was the only claim settled; and that the damages from that claim arose after the chapter 13 case was filed.

■ The law of Wyoming governs the interpretation of the Settlement Agreement between Mrs. Larsen and Mr. Andrews. A release is contractual in nature and is scrutinized in accordance with traditional standards for construing contracts. *M & A Construction Corp. v. Akzo Nobel Coatings, Inc.*, 936 P.2d 451, 456 (Wyo.1997). A release discharges another from an existing or asserted duty, claim or obligation, and bars recovery thereon. *Kelliher v. Herman*, 701 P.2d 1157, 1159 (Wyo.1985).

■ The purpose of interpreting the release in this case is to determine the intent of the parties, i.e., what claims were settled and for what was the consideration of $91,000 paid. If a contract is in writing and is clear and unambiguous, the intention is to be secured from the words of the contract. The contract as a whole should be considered with each part being read in light of all other parts. *Amoco Production Co. v. Stauffer Chemical Co. Of Wyoming*, 612 P.2d 463, 467 (Wyo.1980).

Although there is some inconsistency between the two previously quoted provisions of the Settlement Agreement, the contract, taken as a whole, is not ambiguous. In exchange for $91,000 made by specific cash payments, Mrs. Larsen released Mr. Andrews from all claims in the state court lawsuit, not just the claim for breach of fiduciary duty. The intent of both parties was to settle the entire dispute, the consideration for which was cash from Mr. Andrews and a release from Mrs. Larsen.

This analysis is supported by the language contained in the stipulation of dismissal with prejudice. In that document, all parties including Mrs. Larsen agreed that the "entire case" could be dismissed with prejudice "for the reason that the parties have compromised and settled all of their disputes and differences."

To the contrary, Mrs. Larsen now argues that the statement in the Settlement Agreement limiting the settlement to the fiduciary duty claim sets forth the entire intent of the parties. The court disagrees. That statement, included at the obvious request of Mrs. Larsen, was not necessary to effectuate what the parties intended. Mrs. Larsen can characterize the settlement as a single claim resolution, but the purpose and intent of the document was otherwise.

Nor does Mrs. Larsen's characterization of the settlement affect the result intended and clearly expressed in two separate documents. Certainly, the limiting sentence in the Settlement Agreement creates no binding obligation on the part of either party to the contract, and cannot create a binding obligation on the non-party, IRS.

In further support of her position, Mrs. Larsen provided testimony to show that the malpractice and contract claims were separate from the breach of fiduciary duty claim. Mrs. Larsen argues that the conduct supporting the breach of fiduciary duty claim occurred only after the chapter 13 case was filed.

The Larsens' lawsuit against Mr. Andrews was based on alternative theories of recovery. While these theories of recovery are conceptually distinct, legal malpractice is a generic term for claims based on breach of contract, breach of fiduciary duty, or negligence. *Kilpatrick v. Wiley, Rein & Fielding,* 909 P.2d 1283, 1289 (Utah App.1996); *cert. denied,* 919 P.2d 1208 (Utah 1996). These alternative theories are subsumed by the malpractice claim. *Peterson v. Scorsine,* 898 P.2d 382, 383 (Wyo.1995).

The entire case was premised on legal malpractice arising out of Mr. Andrews' representation of the Larsens, including representation during the chapter 7 case. The culmination of the Larsens' lawsuit had its genesis in the chapter 7 bankruptcy case, and the activity occurring therein and related thereto. Mr. Andrews' alleged violations of the standards of professional conduct were based on information obtained before this chapter 13 case was filed. If the three claims were not related, the breach of fiduciary duty claim could not even have been brought in the same action.

Since no findings were made in the state court action, one can only speculate as to precisely when in the continuum the damages began to accrue. Even if the first two claims for relief were difficult to prove, the settling parties did not separately quantify the proceeds relative to each claim. Mrs. Larsen's counsel testified here that neither he nor the Larsens specifically calculated the actual damages relating to each separate claim. Furthermore, the doctrine of res judicata now bars such a calculation.

Other evidence admitted here shows that Mr. Andrews' counsel thought the breach of fiduciary duty claim meritless. Without addressing the merits of that claim, it is as plausible that damages began to accrue when Mr. Andrews sent the letter to the Larsens as it is to assume the damages accrued strictly after the indictment. The court concludes that the alleged damages on the breach of fiduciary duty claim arose at least in part "up to the date of filing the (chapter 13) petition."

## Conclusion

The court concludes that the consideration paid through settlement of the state court malpractice action was proceeds relating to the entire case, including claims for damages existing on the date of filing the chapter 13 petition. Pursuant to the settlement and

Agreed Order with the IRS, those funds are collateral of the IRS.

Accordingly, the motion of the Internal Revenue Service is granted and the standing chapter 13 trustee is hereby **ORDERED** to forthwith turn over to the Internal Revenue Service, or its agent, the funds received from the Clerk of the Ninth Judicial District Court for the State of Wyoming paid in case no. 94–20052 and through Probate No. 8932.