2002 WY 16

Sharon LONG–RUSSELL,
Appellant (Plaintiff),

v.

Robert A. HAMPE, Appellee (Defendant).

No. 00–310.

Supreme Court of Wyoming.

Feb. 4, 2002.

Walter Urbigkit of Frontier Law Center, Cheyenne, WY, Representing Appellant. Argument by Mr. Urbigkit.

Curtis B. Buchhammer of Buchhammer & Kehl, P.C., Cheyenne, WY, Representing Appellee. Argument by Mr. Buchhammer.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] In this matter we are asked to answer questions certified to this Court in accordance with W.R.A.P. 11. Appellant, Sharon Long–Russell (Long–Russell), seeks an opinion of this Court which would resolve the question of whether damages for emotional suffering may be awarded in the context of a legal malpractice case wherein mere negligence on the part of the attorney is the basis for the claim of emotional damages. Appellee, Robert A. Hampe (Hampe), Attorney–at–Law, asks that those questions be answered in the negative.

[¶ 2] We will answer the certified questions in the negative. Such emotional damages may be an element of a claim for damages, in the context of a legal malpractice action, under certain limited circumstances, but not the circumstance of mere negligence.

## THE CERTIFIED QUESTIONS

[¶ 3] The issues certified to this Court, by the district court, are:

1.   Are damages for emotional suffering available in a legal malpractice case which alleges that an attorney negligently failed to properly assert property claims in a divorce, or negligently gave bad advice resulting in a client's eviction from her place of residence?

2.   Are damages for emotional suffering available in a legal malpractice case which alleges that an attorney negligently gave incorrect legal advice about a child visitation order?

## FACTUAL BACKGROUND

[¶ 4]   We are asked to settle a question of law that has not been directly presented to this Court before, but which is somewhat clouded by decisions of this Court that appear to be in conflict with each other.  The facts of this case are not a factor in our resolution of the questions of law at issue, but we will provide a brief outline of those facts so as to provide a structural background for our decision.  The certified questions assume a factual circumstance wherein an attorney is alleged to have been negligent in the performance of his services for a client.

[¶ 5]   Long–Russell was divorced from her second husband, Gary Long (Long), in September, 1982.  The property settlement agreed to in that divorce made no mention of the parties owning a home.  Hampe played no role in that divorce.  At the time of that divorce, Long–Russell and Long were apparently renting a home from Long's parents and completing repairs on that home with a view to ultimately buying it from Long's parents.  Some time after that divorce was final, Long obtained title to the home from his parents.  The most significant complicating factor in this case is that Long–Russell continued to live in that house, apparently without paying rent, until Long had her evicted in 1995.  Hampe did not represent Long–Russell in the eviction action either.  However, Long–Russell did hire Hampe in 1995 to try to undo the eviction.  At the time Hampe began representing Long–Russell, she was still residing in the home but was forcibly evicted pursuant to court order shortly after retaining Hampe as her lawyer.

[¶ 6]   At the time of her divorce from Long, Long–Russell was pregnant with Richard Russell's (Russell) child.  Long–Russell then married Russell, and the two of them (and eventually their two children) continued living in Long's house, with the Russell family living in the upstairs portion of the house and Long living in the basement.  In January, 1995, Long–Russell was divorced from Russell.  The decree of divorce in that case made no reference to Long–Russell or Russell owning any interest in Long's home.  During this divorce and even after the divorce was final, custody of the children born of Long–Russell's marriage to Russell was in dispute.  Hampe did not represent Long–Russell during this divorce or in the child custody proceedings which resulted in her temporary loss of the custody of the children.  However, Long–Russell did hire Hampe to attempt to undo the loss of the custody of her children.  Eventually, Russell was given permanent custody of the children and Long–Russell was accorded liberal visitation.  The record extant suggests that all parties continue to reside in Cheyenne.

[¶ 7]   The essence of Long–Russell's malpractice claim against Hampe is that he accepted her payment of attorney's fees in the approximate amount of $9,500.00 and did no meaningful work for her, gave her bad advice which complicated her legal problems, pursued hopeless claims and failed to pursue hopeful ones, and made promises of success in the legal arena that were irresponsible and, of course, they did not come to pass.  In addition to the loss of the $9,500.00 in attorney's fees, Long–Russell sought damages for loss of her alleged interest in Long's home, emotional damages for the emotional upheaval that attended her eviction from Long's home, and the loss of the custody of her children.  It is the claim of emotional damages that is our sole concern in this matter.

## DISCUSSION

[¶ 8]   In the case *Jackson State Bank v. King,* 844 P.2d 1093, 1096 (Wyo.1993), we stated that Wyoming's comparative negligence statute is limited to those actions based on negligence only, and that it could

not be extended to actions based on contract. Continuing, we stated that the comparative negligence statute would not bar recovery in a legal malpractice action, "which necessarily is based on claims of breach of contract and breach of fiduciary duty." We did not further develop the reasoning behind the quoted sentence and, furthermore, we did not cite pertinent authority to substantiate it. Although we do not call into question the result reached in the *Jackson State Bank* case, from today's perspective it cannot be said to resolve any of the issues at large in the instant matter.

[¶ 9] In the case *Moore v. Lubnau,* 855 P.2d 1245, 1248–49 (Wyo.1993), we adopted a standard well known to the area of medical malpractice as applicable also to the area of legal malpractice. This is a negligence standard, rather than a contract standard. In *Meyer v. Mulligan,* 889 P.2d 509, 516 (Wyo. 1995), we continued to discuss legal malpractice as an action sounding in negligence. Also *see Peterson v. Scorsine,* 898 P.2d 382, 388 (Wyo.1995) (wherein it is suggested that legal malpractice claims may sound both in contract and in negligence).

[¶ 10] In *Daily v. Bone,* 906 P.2d 1039 (Wyo.1995), we held that a claim for emotional damages stemming from a tort arising out of an automobile accident is properly assigned to a jury. In *Blagrove v. JB Mechanical, Inc.,* 934 P.2d 1273, 1275–77 (Wyo.1997), we held as follows:

> In Wyoming, our decisions have restricted recovery for emotional distress damages without accompanying physical injury. *Gates v. Richardson,* 719 P.2d 193, 195 (Wyo.1986). We have recognized the torts of intentional and negligently inflicted emotional distress but their application is narrowly construed to allow recovery for emotional distress only under limited circumstances. *Gates,* 719 P.2d at 195; *Leithead v. American Colloid Co.,* 721 P.2d 1059, 1066 (Wyo.1986). We have permitted recovery for emotional distress as an element of damages in certain underlying actions: 1) some intentional torts, *Waters v. Brand,* 497 P.2d 875, 877–878 (Wyo. 1972) (false imprisonment); *Cates v. Eddy,* 669 P.2d 912, 921 (Wyo.1983) (malicious

prosecution); 2) violation of certain constitutional rights, *Town of Upton v. Whisler,* 824 P.2d 545, 549 (Wyo.1992); and 3) breach of the covenant of good faith and fair dealing, *State Farm Mutual Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 833 (Wyo. 1994). Outside of these few instances, we have adhered to the general concept that negligence permits recovery for personal injury or property damage but usually will not result in liability for emotional distress. *Gates,* 719 P.2d at 195; *Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171, 178 (1982); W. Page Keeton et al., Prosser and Keeton on Torts § 54, at 359-60 (5th ed.1984) (few courts permit compensation for negligence which causes fright, shock, or mental disturbance). In a negligence action for personal injury, Wyoming permits recovery for emotional distress accompanying physical injury, but has not yet answered whether emotional distress damages are compensable where the defendant negligently damages or destroys real property.

The Blagroves contend that *Daily* provides authority for permitting recovery of their emotional distress damages under a negligence theory. In *Daily,* Bone drove his snowmobile through a stop sign onto a major highway causing a collision with Daily's vehicle and killing Bone. *Daily,* 906 P.2d at 1042. Daily was not physically injured but her witnessing Bone's impact and death caused her mental suffering of post traumatic stress disorder, depression, and agoraphobia. *Id.* Daily sued Bone's estate for emotional distress caused by Bone's negligence and we decided that, under the circumstances of the case, she was entitled to a trial to determine if Bone's negligence had caused her emotional distress damages. *Id.* at 1044.

*Daily* is not helpful to the Blagroves because it has the limited scope of allowing recovery for mental injury absent physical injury in an automobile collision case. Under the general rule, if Daily had been physically injured in the automobile collision she could have recovered damages for pain and suffering associated with her physical injuries and she could have recovered for the emotional distress of

witnessing Bone's death. *Id.* at 1043. But because the general rule linked physical injury to an emotional distress claim, that rule would not permit Daily to recover for the emotional distress of witnessing Bone's death if she was not physically injured in the collision. *Id.* We determined that the absence of a physical injury should not prevent her from recovering for her mental injury under a negligence theory. She alleged sufficient facts to create a question for the jury and we remanded it for trial. *Id.* at 1044. Our decision in *Daily* resulted from the particular facts involved, did not generally establish that a claim for negligence alleging only mental injury had been recognized in Wyoming, and does not provide an analysis which would extend its result to a property damage situation.

Emotional distress is not usually recoverable as an element of property damages unless an improper motive is involved. *Valley Development Co. v. Weeks,* 147 Colo. 591, 364 P.2d 730, 733 (1961); *see Towns v. Anderson,* 39 Colo.App. 332, 567 P.2d 814, 815 (1977), *reversed on other grounds,* 195 Colo. 517, 579 P.2d 1163 (1978). It is generally agreed that mere sorrow, anger, worry and fear are not compensable and recovery for more serious emotional distress is restricted because of the burden for the judicial system and defendants. The likelihood that courts will be burdened with either fraudulent claims or those of a temporary or trivial nature, and the perceived unfairness of imposing heavy and disproportionate financial burdens upon a defendant, whose conduct was only negligent, for consequences which appear remote from the wrongful deed usually act to restrict recovery. *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509, 519 (1970); Keeton, *supra* § 54 at 360–61.

In deciding whether the plaintiff's interests are entitled to legal protection against the defendant's conduct, we must balance the interest of the injured parties against the view that a negligent act should have some end to its legal consequences. *Gates,* 719 P.2d at 196. We are persuaded that the concerns which have acted to prevent recovery for emotional distress when prop-

erty is damaged remain relevant and weigh against permitting recovery. While we do not doubt that the Blagroves were justifiably and seriously distressed over the damage to the home they had built together with their families, adopting a rule allowing trial on the issue and recovery if proved would result in unacceptable burdens for both the judicial system and defendants. We therefore hold that emotional distress damages in connection with property damages are not compensable.

■ [¶ 11] These precedents establish an apparent and predictable framework for the resolution of the matter before us. We are persuaded that the decision of the Minnesota Supreme Court in the case *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.,* 556 N.W.2d 557 (Minn.1996), comports well with our previous decisions with respect to many aspects of the matter before us, and we will adopt its decision in that case, to govern in similar cases in Wyoming. *Lickteig* was injured in an automobile accident, and the attorneys who represented her admitted their negligence in their representation of her. The issue of damages was submitted to binding arbitration, and a claim for emotional damages in the amount of $45,000.00 was awarded. *Lickteig,* 556 N.W.2d at 559. The decision of the Minnesota Supreme Court is as follows:

We first consider the issue of emotional distress damages. We have not been anxious to expand the availability of damages for emotional distress. *K.A.C. v. Benson,* 527 N.W.2d 553, 559 (Minn.1995); *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 437–38 (Minn.1983). This reluctance has arisen from the concern that claims of mental anguish may be speculative and so likely to lead to fictitious allegations that there is a potential for abuse of the judicial process. *Hubbard,* 330 N.W.2d at 438. Thus, we have been careful to limit the availability of such damages to "those plaintiffs who prove that emotional injury occurred under circumstances tending to guarantee its genuineness." *Id.* at 437.

In tort cases, emotional distress may be an element of damages in only three cir-

cumstances. First, a plaintiff who suffers a physical injury as a result of another's negligence may recover for the accompanying mental anguish. *Langeland v. Farmers State Bank of Trimont*, 319 N.W.2d 26, 31 (Minn.1982). Second, a plaintiff may recover for negligent infliction of emotional distress when physical symptoms arise after and because of emotional distress, if the plaintiff was actually exposed to physical harm as a result of the negligence of another (the "zone-of-danger" rule). *K.A.C.*, 527 N.W.2d at 559; *Langeland*, 319 N.W.2d at 31; *Stadler v. Cross*, 295 N.W.2d 552, 554 (Minn.1980). Finally, a plaintiff may recover emotional distress damages when there has been a "direct invasion of the plaintiff's rights such as that constituting slander, libel, malicious prosecution, seduction, or other like willful, wanton, or malicious conduct." *State Farm Mut. Auto. Ins. Co. v. Village of Isle*, 265 Minn. 360, 368, 122 N.W.2d 36, 41 (1963). *See also, M.H. v. Caritas Family Services*, 488 N.W.2d 282, 290 (Minn. 1992); *Hubbard*, 330 N.W.2d at 437–38; *Langeland*, 319 N.W.2d at 31–32.

We have also recognized the independent tort of intentional infliction of emotional distress. *Hubbard*, 330 N.W.2d at 438. This independent tort differs from the "willful conduct" category above in that it can stand alone as a separate action, whereas in the "willful conduct" category, emotional distress is only an element of the damages arising from an intentional tort that constitutes a direct violation of the plaintiff's rights, such as defamation.

The respondent in this case did not suffer any physical injury; neither was she in any "zone of danger," nor is she alleging intentional infliction of emotional distress. Damages for emotional distress could be justified only had the appellants violated her rights by willful, wanton or malicious conduct. We note at the outset that respondent's complaint contained no allegations of willfulness or malice; it alleged only negligent representation and breach of contract. Respondent's arbitration brief and proposed findings were similarly framed in terms of negligence. In addition, the stipulation entered into by the parties prior to the arbitration hearing went only to the issue of appellants' negligence.

Appellants argue that, in the absence of any allegation of willful conduct, evidence of willful conduct, or finding of willful conduct by the arbitrator, emotional distress damages were wrongfully awarded in this legal malpractice action.

Despite the absence of an allegation or finding of willful conduct, respondent contends that willfulness was shown and found here. In particular, she argues that an arbitrator need not render an account or give reasons for his or her decision, *Hilltop Constr., Inc. v. Lou Park Apartments*, 324 N.W.2d 236, 239–40 (Minn.1982), and that in this case, it can be inferred from the arbitrator's finding that she suffered "compensable" emotional distress, that the arbitrator made the requisite finding of willfulness. Further, she points to allegations presented to the arbitrator in her arbitration brief which, she asserts, support a finding of willful conduct on the part of the appellants.

Our analysis is complicated by the hybrid nature of claims for legal malpractice. To state a claim for legal malpractice, one must show that the "defendant acted negligently *or* in breach of contract." *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 692 (Minn.1980) (emphasis added); *Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 265 (Minn.1992). We have recognized that the two theories will frequently be interchangeable in legal malpractice cases. *Togstad*, 291 N.W.2d at 693.

However, the availability of emotional distress damages in contract actions has been even more restricted than for actions in tort. In general, extra-contractual damages, including those for emotional distress, are not recoverable for breach of contract except in those rare cases where the breach is accompanied by an independent tort. *Olson v. Rugloski*, 277 N.W.2d 385, 388 (Minn.1979); *Haagenson v. National Farmers Union Property and Cas. Co.*, 277 N.W.2d 648, 652 (Minn.1979); *Beaulieu v. Great Northern Ry. Co.*, 103

Minn. 47, 53, 114 N.W. 353, 355 (1907). The accompanying independent tort must be willful. *Olson,* 277 N.W.2d at 388. That is, it must support the extra-contractual damages in its own right as a tort. *See Barr/Nelson, Inc. v. Tonto's, Inc.,* 336 N.W.2d 46, 52–53 (Minn.1983). Thus, even a malicious or bad-faith motive in breaching a contract does not convert a contract action into a tort action sufficient to support an award of emotional distress damages, *Haagenson,* 277 N.W.2d at 652, or other extra-contractual damages, such as punitive damages, *Moore v. John E. Blomquist, Inc.,* 256 N.W.2d 518, 518 (Minn. 1977); *Wild v. Rarig,* 302 Minn. 419, 440–42, 234 N.W.2d 775, 789–90 (1975), *cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976).

Here, the breach of contract and tort claims are not independent: they are interchangeable. Appellants admitted negligence in the loss of respondent's claim against the other driver. From that, the trial court concluded, "An admission to negligence is also an admission to breach of the attorney-client relationship." Moreover, this will be the case in almost all legal malpractice cases. If we were to affirm the award of damages for emotional distress in this case, we would be sanctioning a similar award whenever a lawyer breached his or her contract with a client by negligently performing the promised legal services. This we are not willing to do.

Nor does the conduct giving rise to the purported breach of contract support an award of emotional distress damages *on its own.* The court of appeals seems to imply that a breach of the attorney-client contract is inherently willful. *See Lickteig,* 556 N.W.2d at 560 It is simply not the case that professional malpractice and willful indifference to another's rights are always one and the same. *See Admiral Merchants,* 494 N.W.2d at 267–68. Moreover, a willful breach of contract, in and of itself, is not enough to justify an award of extra-contractual damages. *Haagenson,* 277 N.W.2d at 652; *Barr/Nelson,* 336 N.W.2d at 52–53; *Wild,* 302 Minn. at 440–42, 234 N.W.2d at 789–90. While cases may arise where an attorney acts so egregiously that emotional distress damages may be appropriate, the creation of a per se rule for such damages in every legal malpractice case is not warranted, based on the longstanding limitation of such damages to those instances where there has been a willful violation of another's rights.

We therefore hold that, as in other negligence actions, emotional distress damages are available in limited circumstances. There must be a direct violation of the plaintiff's rights by willful, wanton or malicious conduct; mere negligence is not sufficient. Here, in the absence of an allegation or proof on these essential elements, the award of emotional distress damages was improper.

*Lickteig,* 556 N.W.2d at 560–62 (footnotes omitted). Thus, based solely on an allegation of negligence, a litigant is not entitled to present an emotional damages claim to a jury.

[¶ 12] The standard we have adopted above is fully consistent with the Restatement (Third) of the Law, The Law Governing Lawyers, §§ 48, 50, 52 and 53 (*also see* comment g. to § 53) (2000); *also see Hanumadass v. Coffield, Ungaretti & Harris,* 311 Ill.App.3d 94, 243 Ill.Dec. 705, 724 N.E.2d 14, 18–20 (1999); *Whitehead v. Cuffie,* 185 Ga. App. 351, 364 S.E.2d 87, 89–90 (1987); and *Lawrence v. Grinde,* 534 N.W.2d 414, 420–23 (Iowa 1995).

[¶ 13] With specific regard to the claim relating to child custody, we view with favor the case *McGee v. Hyatt Legal Services, Inc.,* 813 P.2d 754, 758–59 (Colo.App.1990), for the additional guidance it provides. We take special note of that court's concerns about the impossibility of quantifying intangible injuries to the parent-child relationship, the effect recognition of damages would have on the district court's authority to regulate and supervise custody decisions which must turn on the best interests of the child, the certainty of some significant level of emotional disturbance in the dissolution of a marriage which includes a child custody component (especially one burdened with a high level of animosity), as well as the certainty that nei-

ther parent can reasonably expect full-time custody of the children because of the statutorily required liberal visitation with the non-custodial parent.

## CONCLUSION

[¶ 14] We answer the certified question in the negative.

1. Are damages for emotional suffering available in a legal malpractice case which alleges that an attorney negligently failed to properly assert property claims in a divorce, or negligently gave bad advice resulting in a client's eviction from her place of residence?

Our answer is "No," as is more fully explained above.

2. Are damages for emotional suffering available in a legal malpractice case which alleges that an attorney negligently gave incorrect legal advice about a child visitation order?

Our answer is "No," as is more fully explained above.

[¶ 15] This matter is remanded to the district court for further proceedings consistent with this opinion.