Filed 11/1/21  Travenia v. Law Office of Harry E. Hudson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| KAREN TRAVENIA, | C092296 |
| Plaintiff and Appellant, | (Super. Ct. No. STKCVUPN2015000091) |
| v. | |
| LAW OFFICE OF HARRY E. HUDSON et al., | |
| Defendants and Respondents. | |

Plaintiff Karen Travenia, representing herself in pro. per., appeals from the trial court's order granting the motion for nonsuit brought by defendants Harry E. Hudson and the Law Offices of Harry E. Hudson (collectively Hudson) following the parties' opening statements.  Hudson verbally moved for nonsuit on the ground Travenia had not identified evidence supporting her legal malpractice claim and had presented no evidence as to her other two claims.  The trial court asked Travenia whether she was going to offer expert testimony at trial; Travenia said she was not.  The trial court explained expert testimony was necessary to establish the pertinent standard of care and thus, in the

1

absence of having an expert prepared to testify at trial, the motion for nonsuit was granted and the matter dismissed. Travenia appeals. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Travenia failed to provide "a summary of the significant facts limited to matters in the record" as to her opening statement, the motion for nonsuit, and the trial court's ruling, as required by California Rules of Court, rule 8.204(a)(2)(C). Further, Travenia's complaint against Hudson is not contained in the clerk's transcript on appeal. As we can best glean from the minute order addressing Hudson's motion for summary judgment or, in the alternative, summary adjudication, Travenia's causes of action remaining against Hudson at trial were for legal malpractice, breach of fiduciary duties, and fraud. We do our best to summarize Travenia's opening statement, which was at times confusing and unclear.

During her opening statement at trial, Travenia provided the jury with a summary of her background and explained the case arose out of a sexual harassment claim she had brought against the Office of the Attorney General. Hudson represented her in the sexual harassment case *which resulted in a settlement*.

Travenia discussed the four elements pertaining to the legal malpractice claim and identified various documents she intended to introduce as evidence: a client agreement, various emails (in some of which Travenia asked Hudson to request administrative leave), and a letter from the Department of Justice purportedly stating Travenia's sexual harassment claim was substantiated. She explained, "[t]he negligence I'm speaking of is I'm not getting a [*sic*] feedback, I'm not getting any assistance from Mr. Hudson." Travenia identified a document as "the original complaint and the allegations," however, it is unclear to what action the document pertained.

Travenia further showed the jury the following documents she said supported her "negligence" claim: a letter she wrote to Hudson asking for administrative leave and discussing her concerns that the Department of Justice "may be in [her] home"; a letter

2

she wrote to Hudson demanding "compensation for the things that [she] went through from 2005 to 2009" and stating " '[t]he harassment continues" and " 'I am even followed when I leave the building to go to lunch' "; a letter from Hudson to an attorney for the Department of Justice enclosing a letter purportedly stating Travenia's sexual harassment claim was substantiated; an email from Hudson to the attorney for the individual accused of sexual harassment discussing " 'income tax issues' " and a paragraph in an agreement as to a " 'promise not to prosecute' " (Travenia stated the email supported her "negligence and breach of fiduciary duty" claims); a copy of a mandatory settlement conference statement, which Travenia said she never received; a minute order; a tentative ruling on a motion regarding subpoenas issued by the Department of Justice, which Travenia asserted "he was late doing that" and "defendant failed to oppose on the merits"; and a document in which Hudson wrote to the Department of Justice's attorney that Travenia was convinced the $138,500 she was awarded was taxable and, because "it may be," asking whether the payment can be divided into three payments instead -- which the Department of Justice's attorney said she could not do.

Travenia told the jury the settlement check she received stated it was for emotional distress and an Internal Revenue Service publication stated:  " 'If the emotional stress is due to a personal injury that isn't due to a physical injury or sickness, for example, unlawful discrimination or injury to reputation, you must include the damages in your income except for any damages you receive for medical care due to that emotional distress.  Emotional distress including physical symptoms that result from emotional distress such as headaches, insomnia, and stomach disorders.' "  Travenia next identified an email in which she wrote she could not sign an agreement because it "undercuts [her] complaint in its entirety, making [her] the laughing stock, for the sum of $65,000 for four years" and expressing other concerns and requesting administrative leave.  Travenia further showed the jury a letter she had sent to her prior attorney and discussed her negative experience during a mediation.  She said, "Mr. Hudson said two things to me:  It

3

would not be taxable and they would get me for bad faith, so I signed the stipulation." She also said Hudson threatened to withdraw as her counsel on two occasions.

Travenia said the settlement agreement provided she would not return to work, which she had not anticipated, and which negatively affected her retirement income and caused her financial loss due to her age. This, she asserted, was "a loss from his negligence." Travenia further said Hudson failed to conduct investigations and "there was inaction." She said the Department of Justice "wanted to humiliate [her] and put [her] through a psychological or psychiatric evaluation" and Hudson " 'failed to reply on the merits of the psychiatric evaluation.' " Travenia introduced letters in which she expressed frustration with the lack of communication and her disagreement with Hudson's handling of her case. She also introduced emails from Hudson to the Department of Justice's attorney regarding an ex parte notice, a notice of settlement, and a pending motion for summary judgment. Travenia said Hudson told her to draft a portion of the opposition to the motion for summary judgment at the last minute and, "had [she] not filed that stipulation of settlement the next day, [her] case would have been thrown out because he didn't reply." Travenia also referenced an email she had sent to Hudson in which she said she " 'was told that it wouldn't be taxable' " and " 'signed based on that premise,' " expressing concern regarding her financial future, and asking Hudson to file a motion to set the stipulation aside.

Travenia introduced a "subsequent settlement agreement and release of claims that the [Department of Justice] drafted after [she] signed the stipulation for settlement," which was unsigned and undated. She explained the document contained various terms of which she was unaware and she refused to sign it. Thereafter, Travenia filed an ex parte motion and explained she no longer wanted Hudson to represent her. She detailed various concerns with his " 'negligence, incompetent attention, [and] unprofessionalism,' " as stated in a letter. Travenia said she filed a request for a

4

temporary restraining order against the Department of Justice's attorney, which was denied.

Travenia identified the first page of the first amended complaint, stating she "won't go through each and every page on that, it is on file here with the court."[1] She explained she was "presenting the things that really support the four elements of malpractice," and closed with: "Also, know as an attorney, everyone probably already knows this, that they have a bar, California Bar Association. And so they have rules of professional conduct, that bar. Mr. Hudson is held to those standards. They are ethical standards, of course. But everything that I think I've experienced, he has breached those standards. And to -- I hope, you know, you can just look at the evidence and keep an open mind and in my opinion it supports the four elements of malpractice."

Hudson next presented his opening statement. He represented Travenia during a mediation in which the parties entered into a settlement agreement containing the material terms of the settlement; other details in the settlement agreement were to be ironed out at a later time, such as the details of a restraining order. He further described some details pertaining to his representation of Travenia and his investigation of her case. He explained the Department of Justice had filed a motion for summary judgment and, based on his investigation of the case, he believed it was prudent to settle the case, advising Travenia it would be difficult to obtain a "large-dollar settlement." Hudson said his expert would discuss the "elements that need to be proved in her underlying case" and he anticipated the expert would state Travenia had a good chance of losing the motion for summary judgment and would not have obtained a favorable jury verdict even if the motion for summary judgment was denied.

---

[1]     The document is not contained in the clerk's transcript on appeal.

Hudson said the morning after entering into the settlement agreement, in which Travenia agreed to retire from the Department of Justice, Travenia called Hudson and expressed concern "about the fact that this settlement may be taxable because of the reference to it being for emotional distress trauma." Hudson spoke to a tax attorney who said it would not be taxable if Travenia sustained an injury. Hudson told Travenia he did not believe it would be taxable. In any event, the Department of Justice refused to modify the settlement agreement "to do anything about it" even if the settlement award was taxable.

Hudson explained Travenia refused to sign the settlement agreement and the Department of Justice filed a motion to enforce the settlement agreement as written without her signature, which was granted. Hudson said his expert was a licensed attorney with over 40 years of legal experience and had handled matters involving the State Bar. Although Travenia filed a complaint with the State Bar, he was not reprimanded.

After concluding his opening statement, Hudson verbally moved for nonsuit. Hudson argued Travenia had failed to identify any evidence supporting her claims of legal malpractice. He further argued she "presented nothing in her opening with respect to the issue of fraud" and reiterated "[s]he has presented nothing in respect to the other two counts." Travenia objected to the motion, stating she "didn't expect to actually start producing any documentation" during her opening statement and she "was confused as to what to do." She further said: "I do have evidence of fraud. Primarily was entered into the settlement agreement twice, none of which was written. And the California Rules of Conduct indicate that an attorney must when entering into negotiations for settlement advise their client in writing, and that never happened. I was told if I didn't sign -- first I was told I was being unreasonable." Travenia continued: "The reason he said -- 'he' meaning Mr. Hudson, said that, he said he was going to leave the case if I didn't sign in mediation . . . is because I was being unreasonable. And he never presented me with anything written. He didn't tell me about the true offers in either event. I didn't know of

6

mediation until the night before, and I have things to substantiate what I'm saying. [¶] As far as the opening statement, I covered the four -- I sued for malpractice and I covered the four elements of malpractice, but I haven't finished producing evidence to support this lawsuit."

Hudson responded: "In her opening, she made no reference to the fact of supposedly she was not notified of the settlement conference until the night before. I don't know if that is true or not. I don't think that matters. That has nothing to do [*sic*] whether somebody is competent or not. She made no reference to false offers. I know exactly what she is talking about. There are some indications of potential payment plans in reference to what Ringler and Associates does, however those were not offers. That starts with 'Are you interested in a resolution?' That is a settlement -- what is that, starts with settlement [*sic*]."

The trial court noted Hudson mentioned he had an expert who was going to offer legal opinions regarding his conduct. The trial court then asked Travenia: "Ms. Travenia, you do not have an attorney to come in and testify about the professional negligence; is that right?" Travenia responded: "I don't have an attorney to testify about that, but if it's what the statute says . . . ." The trial court confirmed, "[i]t's required under the law." Travenia disagreed: "Your Honor, I beg to differ because it says with the failure of an attorney, the performance is so clear that a trier of fact may find professional negligence unassisted by expert testimony, the expert testimony is not required. [Citation], it's not required." The trial court explained: "Yes, it is. It is required in a case. It's only so egregious someone missing the statute of limitations that you don't need an attorney for. When it comes to everyday duties the attorney does and the attorney's conduct during settlement negotiations, representing at trial, making their decisions, it requires expert testimony." Travenia retorted: "I can get an attorney if you would allow me, but you wouldn't allow me an extension, sir." The judge replied: "We're at the end of the five years. I did deny your motion. [¶] You need an attorney on

7

these. [¶] The Court is going to grant the motion of nonsuit as to the remaining counts. [¶] The matter is dismissed."

Travenia appeals.

We initially dismissed Travenia's appeal for failing to file the designation of the record on appeal in the superior court as required by rule 8.121 of the California Rules of Court. We thereafter granted Travenia's request to reinstate the appeal "on the condition that [she] file the designation of the record on appeal with the trial court clerk by November 30, 2020." The order further provided "[t]he trial court is authorized to accept the designation if presented within the time provided and proceed with preparation of the record of appeal," and "[f]ailure to comply with the conditions of this order will result in the immediate dismissal of the appeal without further notice."

Travenia filed the notice designating the record on appeal in the superior court on December 8, 2020. The record on appeal was filed in this court on February 26, 2021. The parties thereafter filed their respective appellate briefs.

DISCUSSION

I

*The Appeal Was Not Dismissed*

Hudson argues, "[t]his Court by its own order dismissed this Appeal on December 1, 2020," because Travenia failed to comply with the November 20, 2020, order's directive to file the designation of record on appeal with the superior court clerk by November 30, 2020. Hudson is mistaken. To dismiss an appeal, an order of dismissal must be entered. The November 20, 2020, order merely advised Travenia of the ramifications if she failed to comply with it. This appeal has, thus, not been dismissed and Hudson's assertion that this court "does not retain jurisdiction to decide this Appeal on its merits" is incorrect.

We exercise our discretion to permit Travenia to maintain her appeal irrespective of her failure to comply with the November 20, 2020, order because the record on appeal

8

was filed in this court and the parties prepared and filed their respective briefs on the merits.  We do not agree with Hudson's assertion that equity demands dismissal.

## II

### *Travenia Has Failed To Prove Error*

"A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, plaintiff's evidence does not permit a jury to find in plaintiff's favor."  (*Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1234.)  "The granting of a motion for nonsuit is authorized by Code of Civil Procedure 581c at any time after plaintiff has completed his[, her, or its] opening statement."  (*Gallegos v. Union-Tribune Publishing Co.* (1961) 195 Cal.App.2d 791, 796.)  "Such judgment will be affirmed if from all the facts alleged in the complaint and stated by counsel and all the favorable inferences to be deduced therefrom, it is plainly apparent that a case cannot be maintained by the plaintiff."  (*Paul v. Layne & Bowler Corp.* (1937) 9 Cal.2d 561, 564.)

We review de novo whether a nonsuit was properly granted.  (*Curtis v. Santa Clara Valley Medical Center* (2003) 110 Cal.App.4th 796, 800.)  That said, even in de novo review cases, our review is limited to only the issues properly raised and adequately briefed on appeal.  (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125.)  The appellant must affirmatively demonstrate error by presenting citations to the record and any supporting authority.  (*Mark Tanner Construction, Inc. v. HUB Internat. Ins. Services, Inc.* (2014) 224 Cal.App.4th 574, 584.)

Here, the question is whether, in the absence of expert testimony as to the standard of care applicable to attorneys, Travenia has established that there was an aspect of her case as to which a properly instructed jury could have found in her favor given the facts asserted in her opening statement.  As we explain, Travenia has failed to carry her burden of proving error.

Before we delve into the issue presented, we note our review is subject to various procedural and substantive rules and is limited to only those issues appropriately

9

preserved for and presented on appeal. While we are not unsympathetic to the efforts a pro. per. party expends in presenting his, her, or their case, and fully recognize the personal investment a pro. per. party has in his, her, or their case, we *must* treat a pro. per. party the same as a represented party, i.e., uniformly applying the procedural and substantive rules. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

In that vein, we disregard the following in our review of this case: (1) factual assertions unsupported by citations to the record (*Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1246 [" '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been [forfeit]ed' "]); (2) citations to cases and general statements of law in the absence of reasoning applying the rule of law or analysis in the cited cases to the facts of this case (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["citing cases without any discussion of their application to the present case results in forfeiture"]); (3) conclusory statements and arguments failing to disclose the reasoning by which we are asked to reach the conclusions asserted (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153); and (4) citations to out-of-state cases to the extent there is established California precedent and the out-of-state cases have no persuasive value as to any undecided issue under California law.

We further note the following disagreements as to factual assertions made in the opening brief. First, the trial court did not dismiss Travenia's case on its own motion; it dismissed the case in response to Hudson's motion for nonsuit. Second, the trial court did not fail to provide Travenia "a chance to correct or enhance her opening statement," as she asserts. The record shows the trial court gave Travenia an opportunity to respond to the motion for nonsuit, and she did, in fact, retort. Travenia did not request an opportunity to modify or add to her opening statement; she instead asked to continue trial to obtain an expert, to which the trial court responded it had previously denied her motion to continue because of the five-year deadline to bring the case to trial. Travenia does not

assert the trial court's refusal to continue trial was error. Third and finally, Travenia did not introduce her causes of action, other than the legal malpractice cause of action, to the jury. In the cited portion of the reporter's transcript upon which Travenia relies, she told the jury: "This is the original complaint and the allegations. There were several pages, so I will just skip through the meat of the pages and go to the last page. So that later on you can review this, so that is the last page of the complaint. Like I said, it's very lengthy, it's 13 pages."

Turning to the merits of the matter, we infer from the trial court's ruling that all of Travenia's causes of action were dependent on her proving Hudson had breached his standard of care to her, as her attorney. Travenia points to nothing in the record establishing the contrary and we do not have a copy of the operative complaint in the record on appeal for our review. (See *Paul v. Layne & Bowler Corp.*, *supra*, 9 Cal.2d at p. 564 [review of motion for nonsuit requires review of complaint and statements by counsel].) Moreover, in her retort to the motion for nonsuit as to the fraud cause of action, Travenia asserted her fraud cause of action was based on Hudson's alleged failure to provide her with written notice of settlement negotiations and/or agreements, delay in notifying her of mediation, and his threat to withdraw as counsel during mediation. Such allegations pertain to an attorney's standard of care.

The standard of care against which alleged acts of professional negligence are to be measured usually requires expert testimony. (*Lipscomb v. Krause* (1978) 87 Cal.App.3d 970, 975-976; *Davis v. Damrell* (1981) 119 Cal.App.3d 883, 887 ["When the challenged conduct or omission relates to matters not within the common knowledge of a layman, the question of professional negligence will generally require expert testimony for appropriate factual resolution"].) A legal malpractice plaintiff can make out a case without presenting expert testimony only in those cases where the failure of the attorney is so clear that reasonable minds could not differ, or the nature of the omission is such that a trier of fact would not require the assistance of an expert to understand why it did,

11

or did not, violate the standard of care. (*Wilkinson v. Rives* (1981) 116 Cal.App.3d 641, 647-648 [noting existence of exception to requirement of expert testimony but finding it inapplicable to attorney's failure to advise client to execute optional affidavit when recording homestead declaration].) Examples of such exceptional circumstances include an attorney's abject failure to conduct any research on a point of law (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1093-1094), or advising a client to commit an act that is a violation of the Penal Code (*Goebel v. Lauderdale* (1989) 214 Cal.App.3d 1502, 1509).

Based on our review of Travenia's opening statement, we agree with the trial court that this is not the sort of case in which an attorney's breach of the applicable standard of care can be established without the aid of expert testimony. Questions presented as to an attorney's standard of care in receiving and providing advice regarding settlement proceeds, filing documents, assessing the merits of a case, timely communicating with a client, discussing withdrawal of representation as counsel, etcetera, require expert testimony. We thus affirm.

## DISPOSITION

The judgment is affirmed. In the interest of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


/s/_____
Robie, J.


We concur:


/s/_____
Blease, Acting P. J.


/s/_____
Duarte, J.


12